MICHAEL J. HARRISON, Respondent, v STATE OF NEW YORK, Appellant. [931 NYS2d 662]—

The claimant, a construction worker employed on the State of New York's Wantagh Bridge project, was assigned by his supervisor to build a rain shelter over other workers with the assistance of two coworkers. To do so, the claimant and his coworkers needed to move a portable generator weighing 150 to 200 pounds from one bridge pier to another. Although there were cranes on site, none were available to move the generator. Instead, the workers' supervisor told them to move the generator using a tugboat. The claimant's coworkers lifted the generator to the lip of the pier and the claimant, who was standing on the boat, attempted to steady it from the deck of the boat, approximately $5^{1}/_{2}$ to 6 feet below. However, before the claimant's coworker could get down to help him lift the generator to the boat's deck, the generator slipped toward the claimant, caught on his tool belt, and pulled him to the deck, injuring his back.

The claimant brought this claim against the State of New York, the owner of the site, alleging violations of Labor Law §§ 200, 240 (1) and § 241 (6). The State moved for summary judgment dismissing the claim, and the claimant cross-moved for summary judgment on the issue of liability pursuant to Labor Law § 240 (1). The Court of Claims granted the claimant's cross motion and denied the State's motion in its entirety. We modify.

The goal of Labor Law § 240 (1) is to "provide 'exceptional

protection' for workers against the 'special hazards' which stem from a work site that is either elevated or positioned below the level where materials are hoisted or secured" (*La Veglia v St. Francis Hosp.*, 78 AD3d 1123, 1126 [2010], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-502 [1993]; *see Cun-En Lin v Holy Family Monuments*, 18 AD3d 800 [2005]). However, "[n]ot every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]; *see Gutman v City of New York*, 78 AD3d 886, 887 [2010]). Thus, injuries arising from "routine workplace risks" rather than from elevation differentials will not fall within the statute's protection (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]; *see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Instead, "the single decisive question is whether the [claimant's] injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d at 603; *see Gasques v State of New York*, 59 AD3d 666, 667 [2009], *affd* 15 NY3d 869 [2010]).

Here, despite the State's arguments to the contrary, the 5½ or 6 foot elevation between the pier and the deck of the boat that the claimant was standing on created a sufficient elevation-related risk to trigger Labor Law § 240 (1) liability (*compare Outar v City of New York*, 286 AD2d 671, 672 [2001], *affd* 5 NY3d 731 [2005]). The State's arguments that this was a routine hazard typically associated with a construction site and that the height of the generator above the claimant was de minimis are unavailing (*see Runner v New York Stock Exch., Inc.*, 13 NY3d at 602-603; *Pritchard v Tully Constr. Co., Inc.*, 82 AD3d 730 [2011]; *Mendoza v Bayridge Parkway Assoc., LLC*, 38 AD3d 505, 506 [2007]; *Salinas v Barney Skanska Constr. Co.*, 2 AD3d 619, 620-621 [2003]; *but see Gutman v City of New York*, 78 AD3d at 886-887; *Garcia v Edgewater Dev. Co.*, 61 AD3d 924, 925 [2009]; *Ienco v RFD Second Ave., LLC*, 41 AD3d 537, 538-539 [2007]). Accordingly, the court properly granted the claimant's cross motion for summary judgment on the issue of liability pursuant to Labor Law § 240 (1).

That branch of the State's motion which was for summary judgment dismissing so much of the claim as alleged a violation of Labor Law § 241 (6) should have been granted, as the specific

Industrial Code provision upon which the claimant predicated this claim has no application under the facts presented.

Labor Law § 241 (6) "imposes a *nondelegable* duty of reasonable care upon owners and contractors 'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998], quoting Labor Law § 241 [6]). In so doing, owners are obliged to comply with any applicable regulations of the Industrial Code and may be held liable for a violation of a provision " 'mandating compliance with concrete specifications' " (*La Veglia v St. Francis Hosp.*, 78 AD3d at 1125-1126, quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d at 505; *see Cun-En Lin v Holy Family Monuments*, 18 AD3d at 802; *Misicki v Caradonna*, 12 NY3d 511, 515 [2009]; *Miano v Skyline New Homes Corp.*, 37 AD3d 563, 565 [2007]; Labor Law § 241 [6]). Because this section imposes "a nondelegable duty on property owners, [a] plaintiff need not show that [the] defendant[ ] exercised supervision or control over the work site in order to establish a right of recovery under section 241 (6)" (*St. Louis v Town of N. Elba*, 16 NY3d 411, 413 [2011]; *see Romero v J & S Simcha, Inc.*, 39 AD3d 838, 839 [2007]).

Here, the State contends that the section relied upon by the claimant, namely, 12 NYCRR 23-1.7 (f), is not applicable to the facts of this case and therefore cannot serve as the basis for liability under Labor Law § 241 (6). We agree.

Whether a regulation applies to a particular condition or circumstance is a question of law for the court (*see Spence v Island Estates at Mt. Sinai II, LLC*, 79 AD3d 936, 938 [2010]).

12 NYCRR 23-1.7 (f) provides that "[s]tairways, ramps or runways shall be provided as the means of access to working levels above or below ground except where the nature or the progress of the work prevents their installation in which case ladders or other safe means of access shall be provided." Here, the tugboat that the plaintiff was standing in was not a working level below ground requiring a stairway, ramp, or runway under the regulation (*see Torkel v NYU Hosps. Ctr.*, 63 AD3d 587 [2009]; *Lavore v Kir Munsey Park 020, LLC*, 40 AD3d 711 [2007]; *Amantia v Barden & Robeson Corp.*, 38 AD3d 1167, 1169 [2007]; *Farrell v Blue Circle Cement, Inc.*, 13 AD3d 1178 [2004]).

Labor Law § 200 "codifies the common-law duty imposed upon an owner or general contractor to provide construction and demolition workers with a safe place to work" (*La Veglia v St. Francis Hosp.*, 78 AD3d at 1125; *see Aguilera v Pistilli*

*Constr. & Dev. Corp.*, 63 AD3d 763, 764 [2009]). Where, as here, a claimant's Labor Law § 200 claim is premised upon "alleged . . . dangers in the methods . . . of the work" (*Ortega v Puccia*, 57 AD3d 54, 61 [2008]), an owner or general contractor will be held liable only where it "had the authority to supervise or control the performance of the work" (*Austin v Consolidated Edison, Inc.*, 79 AD3d 682, 683-684 [2010] [internal quotation marks omitted]; *see La Veglia v St. Francis Hosp.*, 78 AD3d at 1125; *Erickson v Cross Ready Mix, Inc.*, 75 AD3d 519, 522 [2010]). However, " '[t]he right to generally supervise the work, stop the contractor's work if a safety violation is noted, or to ensure compliance with safety regulations and contract specifications is insufficient to impose liability under Labor Law § 200 or for common-law negligence' " (*Austin v Consolidated Edison, Inc.*, 79 AD3d at 684, quoting *Gasques v State of New York*, 59 AD3d at 668; *see La Veglia v St. Francis Hosp.*, 78 AD3d at 1125).

Here, the claimant testified at his deposition, as did his coworker, that the workers received their instructions from a contractor's foreman and that the State's inspectors primarily monitored the site for quality control. The State's engineer in charge confirmed that, although the State had the power to stop work due to safety risks, his primary role, and that of the inspectors, was to ensure that work was performed in accordance with project specifications and to monitor for quality control. Since the State carried its prima facie burden of demonstrating that it lacked sufficient authority to supervise or control the work and the claimant did not raise a triable issue of fact, the Court of Claims erred in denying that branch of the State's motion which was for summary judgment dismissing so much of the claim as alleged a violation of Labor Law § 200 (*see Gurung v Arnav Retirement Trust*, 79 AD3d 969, 970 [2010]; *Austin v Consolidated Edison, Inc.*, 79 AD3d at 684; *La Veglia v St. Francis Hosp.*, 78 AD3d at 1125; *Erickson v Cross Ready Mix, Inc.*, 75 AD3d at 522-523; *Delahaye v Saint Anns School*, 40 AD3d 679, 684 [2007]). Dillon, J.P., Balkin, Eng and Cohen, JJ., concur.