## Bogart v Warner Media, LLC

2025 NY Slip Op 31393(U)

April 21, 2025

Supreme Court, New York County

Docket Number: Index No. 159183/2019

Judge: David B. Cohen

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    <u>HON. DAVID B. COHEN</u> | **PART**      58 |
| *Justice* | |

-----------------------------------------------------------------------------X

RYAN BOGART,

                           Plaintiff,

               - v -

WARNER MEDIA, LLC, ERY TENANT, LLC, TW NY
PROPERTIES, LLC, EUROTECH CONSTRUCTION
CORP., UNITY ELECTRIC CO., INC.,

                           Defendant.

-----------------------------------------------------------------------------X

WARNER MEDIA, LLC

                           Plaintiff,

               -against-

STRUCTURE TONE, INC.

                           Defendant.

-----------------------------------------------------------------------------X

WARNER MEDIA, LLC, TW NY PROPERTIES, LLC

                           Plaintiff,

               -against-

FOREST ELECTRIC CORP., UNITY ELECTRIC CO., INC.

                           Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 159183/2019 |
| **MOTION DATE** | 09/06/2024, 09/26/2024, 09/26/2024, 09/26/2024 |
| **MOTION SEQ. NO.** | 003 004 005 006 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595248/2020

Second Third-Party
Index No. 595439/2022

The following e-filed documents, listed by NYSCEF document number (Motion 003) 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 122

were read on this motion to/for         <u>         SUMMARY JUDGMENT(AFTER JOINDER     </u>.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148

were read on this motion to/for         <u>         JUDGMENT - SUMMARY         </u>.

| | |
|---|---|
| **159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**<br>**Motion No. 003 004 005 006** | **Page 1 of 24** |

The following e-filed documents, listed by NYSCEF document number (Motion 005) 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 224, 225, 229, 230, 231, 232, 233, 234, 235, 236, 237

were read on this motion to/for          JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 221, 222, 223, 226, 227, 228

were read on this motion to/for          JUDGMENT - SUMMARY          .

Motion sequence numbers 003, 004, 005 and 006 are hereby consolidated for disposition.

This is an action to recover damages for personal injuries allegedly sustained by plaintiff, a union construction worker, on August 7, 2018, when, while working at a construction site located on the 28th floor of 30 Hudson Yards, New York, New York (the Premises), he tripped on an electrical conduit and fell.

In motion sequence number 003, second third-party defendant Forest Electric Corp (Forest) moves, pursuant to CPLR 3212, for summary judgment dismissing the second third-party complaint and all crossclaims against it.

In motion sequence number 004, defendant Eurotech Construction Corp. (Eurotech) moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it.

In motion sequence number 005, defendant ERY Tenant, LLC (ERY) defendant/second third-party plaintiffs Warner Media, LLC (Warner) and TW NY Properties, LLC (TW) (together the Warner defendants) move, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against them, and for summary judgment in their favor on their contractual indemnification claims against defendant/second third-party defendant Unity Electric Co. Inc. (Unity).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 2 of 24**

2 of 24

[* 2]

In motion sequence number 006, Unity moves, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it.[1]

## I. BACKGROUND

On the day of the accident, Warner was effectively the owner of the Premises, and its subsidiary, TW, was the tenant thereof. Defendant ERY Tenant LLC was the property manager. TW hired third-party defendant Structure Tone, Inc. (Structure) to provide general contracting services for a project at the Premises that entailed an interior renovation. Structure, which employed plaintiff, subcontracted carpentry work to Eurotech.

***Plaintiff's Deposition Testimony (NYSCEF Doc No. 160)***

Plaintiff testified that on the day of the accident, he was employed by Structure as a laborer (plaintiff's tr at 24, 29). His foreman was also a Structure employee (*id.* at 29), and he only received instruction and supervision from Structure (*id.* at 122). His duties included removing debris and garbage at the job site (*id.* at 29-30). He would also perform "protection work" so "as things get built, [they] protect them so that they don't get damaged during the rest of the construction" (*id.* at 30). For example, plaintiff would protect floors by placing "Masonite" or "brown paper" down (*id.* at 30). If plaintiff ever saw a hazardous condition on the Premises, he would inform the trade responsible for that condition (*id.* at 119).

Plaintiff testified that on the day of the accident, he was working on the 28th floor of the Premises (which is also known as the "42nd floor display level") (*id.* at 39), along with a coworker named "Rob" (*id.* at 43). They were assigned to "get prepared for a glass delivery . . . which meant you were protecting the carpet, making sure the areas were clear and ready for the

---

[1] By stipulation of discontinuance dated March 21, 2022, the third-party action was discontinued without prejudice (NYSCEF Doc. No. 49).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**                                         **Page 3 of 24**
**Motion No.  003 004 005 006**

[* 3]

delivery" (*id.* at 44). This entailed placing "carpet mask" over the carpet and "put[ting] down some Masonite" (*id.* at 45).

The accident location was the north side of the 28th floor (*id.* at 50). He described the location as a "big area" (*id.* at 50), with an "open floor plan" (*id.* at 49), that was "rectangular in shape" (*id.* at 50). It had been prepared for glass delivery. Plaintiff also confirmed that the accident location was "not like a hallway" (*id.* at 51). He did not know the area's dimensions.

Immediately prior to the accident, plaintiff was "finishing up" his end of day tasks and "double checking the entire floor" (*id.* at 55), when he tripped over "something very hard," causing him to fall to the ground (*id.* at 126). After he fell, plaintiff "looked back and saw [a piece of] conduit" (*id.* at 81) (the Conduit) sticking up approximately "2 inches" (*id.* at 123) from the floor. He stated that "it was the only object in the area" that could have cause him to trip (*id.* at 81). The accident was unwitnessed (*id.* at 96).

Plaintiff further testified that, on the day of the accident, the Conduit was not covered or otherwise marked (*id.* at 98). He further testified that he had never seen covers or cones over the Conduit at any time (*id.* at 115). Plaintiff explained that, in his experience, these types of conduits were usually left higher and spray painted, to make them more visible (*id.* at 123 ["from what [he] witnessed . . . the pipe is installed [and] usually left maybe a foot to 2 feet tall and spray painted orange . . . to be . . . less of a hazard"]).

Plaintiff was asked whether he had ever removed a cone or a barricade so he could access a work area. He stated that it was "definitely possible" but if he ever had to do so he "would put it back" when he finished (*id.* at 119). He testified that he did not remove a cone or barricade from the subject Conduit (*id.* at 120).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 4 of 24**

Prior to the accident, plaintiff had never seen a cone or barricade over the conduit (*id.* at 115, 121). He recalled that he "mentioned to Unity" – an electrical subcontractor – that it needed "to protect those pipes with some sort of cone" (*id.* at 103). He did not know for certain that Unity was the entity that installed the conduit (*id.* at 106, 115 ["It could have been [Unity], or it could have been installed by other contractors"]).

At the deposition, plaintiff was shown several photographs and confirmed that he took them the day after the accident. He further confirmed that the photographs depicted the accident location (*id.* at 57), including pieces of "[e]lectrical conduit" (*id.* at 60) that were sticking up from the floor. The conduit depicted in the photograph is what he tripped over (*id.* at 63-64). The photographs also depicted Masonite and carpet masking that plaintiff and his coworker had installed prior to the accident (*id.* at 71). The carpet masking around the Conduit had been cut out to allow the masking to lie flat on the surrounding carpet (*id.* at 73).

### Deposition Testimony of Warner (NYSCEF Doc. No. 161)

Anthony Buono testified that on the day of the accident he was Warner's director of media (*id.* at 11), and his duties on the Project included "[r]eview of design drawings, observation of the actual construction of those design drawings, common recommendations . . . punch list upon project completion, witnessing tests and commissioning" (*id.* at 22). He was not personally involved in any construction, and he did not know who installed the Conduit (*id.* at 53).

TW was the tenant of the Premises, who acted as the owner for the Project "even though [it did not] physically own the real estate" (*id.* at 18). The Project was an "interior fit-out" meaning that TW and Warner were not changing anything structural in the Premises.

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 5 of 24**

5 of 24

TW hired Structure as the "construction manager and general contractor" for the Project (*id.* at 28). Structure was responsible for hiring subcontractors for the Project (*id.* at 33-34).

Buono was not on site regularly, and he never communicated with any of the trades or subcontractors (*id.* at 40). He would participate in weekly or bi-weekly progress meetings, often over the telephone (*id.* at 39). Safety matters were never discussed, and Warner did not hire a safety company.

### Deposition Testimony of Forest (NYSCEF Doc. No. 162)

Drew Mino testified that on the day of the accident, he was Forest's project manager (Mino tr at 11). Forest performed work on the Project pursuant to a contract with Structure (*id.* at 21), and specifically, installed data cables and "buil[t] out an IDF closet on all the floors" (*id.* at 13); an IDF closet is an electrical junction room (*id.* at 33-34). Forest also installed "equipment racks and riser cabling between all the floors" (*id.* at 28). Forest was not responsible for the work that included bringing electrical cabling to other portions of the floor, such as individual workstations (*id.* at 35). Mino did not know who was tasked with that work.

Mino was shown a photograph of the accident location, and identified the Conduit as a "poke-through to bring power and data" to workstations (*id.* at 37-38). Forest was not involved in that work (*id.* at 38).

Mino was also shown a close-up photograph of a conduit sticking up from the floor, and testified that Forest did not install conduits into any floors as part of any of its work on the Project (*id.* at 40). Rather, those would have been installed by the electrical installer (*id.* at 41).

Mino reiterated that Forest was not "awarded the electrical contract for the floor. [It was] only contracted to do data work" on the floor where the accident occurred (*id.* at 50). Forest's data work did not take place in the area where the accident occurred (*id.* at 50).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 6 of 24**

6 of 24

[* 6]

### Deposition Testimony of Unity (NYSCEF Doc. No. 163)

Gregory Valdner testified that on the day of the accident, he was Unity's assistant general superintendent at the Project (Valdner tr at 11), and was present at the Project approximately once a week. Unity was responsible for the "electrical portion of the job, building out electrical closets, lighting, electric to furniture" (*id.* at 12). Structure was the general contractor on the Project (*id.* at 24).

He did not know whether Unity performed work on the floor where the accident took place (*id.* at 55). He was shown a copy of a Structure daily journal for the day of the accident, and confirmed that it noted that Unity was "installing all electrical" on several floors, including the subject floor (*id.* at 66), though he did not know if the document was accurate.

Valdner was shown several photographs and confirmed that they depicted a floor of the Premises, though he did not know which one (*id.* at 2-28). He confirmed that one photograph depicted a "pathway" – a "way of getting from . . . the floor below to the floor above" (*id.* at 29). He testified that they did not look like the type of "pathways" that Unity installed, because Unity used "pipes and they're round," while the objects in the photograph were "either bent or some other type of material" (*id.* at 29). He acknowledged that the tubing that Unity used could look like what was depicted in the photograph "if somebody damaged it" (*id.* at 32). He did not know who installed the subject Conduit (*id.* at 44). He believed, based on experience, that the conduit "would be for data connectivity" (*id.* at 45).

Valdner testified that the Conduit, as depicted in the photograph, posed a safety hazard because there was "no protection around it" (*id.* at 33). Unity placed "safety cones" over open conduits immediately after installation (*id.* at 33-34), and they would be kept in place until Unity was "ready to use it" (*id.* at 34). Unity provided the safety cones (*id.* at 40).

**159183/2019  BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 7 of 24**

7 of 24

[* 7]

At the deposition, Valdner reviewed a copy of Unity's contract for the Project, and confirmed that Unity's duties included installing and finishing electrical conduits (*if.* At 51).

***Deposition Testimony of Eurotech (NYSCEF Doc. No. 109)***

Tomislav Pervan testified that on the day of the accident, he was Eurotech's carpentry foreman for the Project (Pervan tr at 9). Eurotech was responsible for "all of the carpentry" on the subject floor, including "building of the offices, installation of ceilings, taping, finishes" (*id.* at 15). Eurotech often coordinated its work with Unity, such as Eurotech framing a wall and then Unity installing electrical devices after Eurotech was done (*id.* at 28).

Eurotech did not install conduits or any other form of electrical piping (*id.* at 30-31 ["We had nothing to do with it"]), and it was not responsible for securing or otherwise protecting conduits (*id.* at 35).

Pervan was shown a copy of several photographs and testified that they depicted a floor in the Premises, though he could not identify what floor. One photograph depicted a conduit that would be used to connect "furniture" such as workstations (*id.* at 36). He believed, but did not know for certain, that Unity was responsible for furniture conduits (*id.* at 36), and that Forest was responsible for fire alarm installation (*id.* at 54), not conduit installation (*id.* at 57-58).

## II.     DISCUSSION

"[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Pullman v Silverman,* 28 NY3d 1060, 1062 [internal quotation marks and citations omitted]).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 8 of 24**

Once prima facie entitlement has been established, in order to defeat the motion, the opposing party must "'assemble, lay bare, and reveal his [or her] proofs in order to show his [or her] defenses are real and capable of being established on trial . . . and it is insufficient to merely set forth averments of factual or legal conclusions'" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014], quoting *Schiraldi v U.S. Min. Prods*., 194 AD2d 482, 483 [1st Dept 1993]). "Summary judgment must be denied where there is any doubt as to the existence of a triable issue . . . or where the issue is arguable" (*Genesis Merchant Partners, L.P. v Gilbride, Tusa, Last & Spellane, LLC*, 157 AD3d 479, 482 [1st Dept 2018] [internal quotation marks and citations omitted]).

### A.    *Preliminary Issue (Motion Sequence Numbers 004 and 005)*

Defendants ERY and Eurotech present arguments that they are not proper Labor Law defendants and, therefore, the Labor Law claims against them should be dismissed (*see Rodriguez v Riverside Center Site 5 Owner LLC,* 234 AD3d 623 [1st Dept 2025]).

ERY argues that it was not an owner/tenant, general contractor or agent of either such that it could be a proper Labor Law defendant (*see e.g.*, *Nascimento v Bridgehampton Constr. Corp.,* 86 AD3d 189, 192-193 [1st Dept 2011]).  No one opposes ERY's status under the Labor Law.  Accordingly, ERY is entitled to summary judgment dismissing the Labor Law claims against it.

Eurotech argues that it, too, is not an owner, general contractor or agent of either and, therefore, it cannot be liable under Labor Law §§ 240(1) and 241(6).  Notably, as discussed more fully below (*see* common-law negligence discussion, infra), Eurotech has established that as the carpentry subcontractor, its work did not involve installing or maintaining/securing conduit.  "If the subcontractor's area of authority is over a different portion of the work or a

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 9 of 24**

9 of 24

[* 9]

different area than the one in which the plaintiff was injured, there can be no liability under [the statutory agent] theory" (*Nascimento*, 86 AD3d at 193).

The Warner defendants' argument that a question of fact exists as to whether Eurotech was delegated the responsibility for the Conduit is unpersuasive. Pervan's testimony that Eurotech and Unity coordinated work does not establish that Eurotech installed or was otherwise responsible for the Conduit, such that it became an agent for the purpose of the Labor Law.

Accordingly, as Eurotech was not "delegated the supervision and control over . . . the work which [gave] rise to the injury" it is not a statutory agent of the owner or general contractor (*Nascimento*, 86 AD3d at 193). Thus, it is entitled to summary judgment dismissing the Labor Law claims against it.

**B.      *Labor Law § 240(1) Claim (Motion Sequence Numbers 004, 005 and 006)***

As plaintiff "acknowledges that the facts here do not implicate Labor Law § 240(1)" (NYSCEF Doc. No. 224), Eurotech, the Warner defendants and Unity are entitled to summary judgment dismissing the Labor Law § 240(1) claims as against them.

**C.      *Labor Law § 241(6) Claims (Motion Sequence Numbers 004, 005, 006)***

Eurotech, the Warner defendants and Unity move for summary judgment dismissing the section 241(6) claim as against them.

Labor Law § 241(6) provides, in pertinent part, as follows:

> All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
> * * *
> (6)     All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 10 of 24**

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]).

To sustain a Labor Law § 241(6) claim, it must be established that the defendant violated a specific, "concrete specification" of the Industrial Code, rather than a provision that considers only general worker safety requirements (*Messina v City of New York,* 300 AD2d 121, 122 [1st Dept 2002]). Further, "a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident" (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017]]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]). "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York,* 88 AD3d 951, 953 [2d Dept 2011]).

As an initial matter, plaintiff lists multiple violations of the Industrial code in his complaint and bill of particulars, but except for sections 23-1.7(e)(1) and (e)(2), plaintiff does not oppose their dismissal. These uncontested provisions are deemed abandoned (*Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section"]).

*a.      Industrial Code 12 NYCRR 23-1.7(e)(1)*

Industrial Code 12 NYCRR 23-1.7(e)(1) provides the following:

(e) Tripping and other hazards

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 11 of 24**

11 of 24

(1) Passageways.  All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping.  Sharp projections which could cut or puncture any person shall be removed or covered.

Initially, the moving defendants argue that this provision is inapplicable because the accident did not occur in a passageway, but a working area governed by section 23-1.7(e)(2).

A passageway, for the purpose of section 23-1.7(e)(1), is defined as "a typically long narrow way connecting parts of a building, and synonyms include the words corridor or hallway. In other words, it pertains to an interior or internal way of passage inside a building" (*Quigley v Port Auth. of N.Y. & N.J.,* 168 AD3d 65, 67 [1st Dept 2018] [internal quotation marks and citation omitted]).

Here, plaintiff testified that the area where the accident occurred was a "big area" with an "open floor plan," and "not like a hallway."  None of the deposed witnesses testified that the area was a passageway, corridor or hallway.

For this reason, plaintiff's reliance on *Prevost v One City Block LLC* (155 AD3d 531 [1st Dept 2017]) is unpersuasive, as there, there was conflicting testimony about whether the area where the plaintiff fell was a corridor or an open space.  There is no such testimonial discrepancy here.  For the same reason, plaintiff's reliance on *Bopp v A.M. Rizzo Elec. Contrs., Inc.* (19 AD3d 348, 350 [2d dept 2005] [question of fact as to whether accident location described as a "corridor" was a passageway or open area]) is also unavailing.

Finally, plaintiff's reliance on a photograph that purports to depict the accident location as a passageway is also insufficient to raise a question of fact, as he cites to no testimony or opinion regarding the photograph that would establish that the depicted area constituted a passageway as contemplated by section 23-1.7(e)(1).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 12 of 24**

12 of 24

Accordingly, section 23-1.7(e)(1) does not apply to plaintiff's accident and the moving

defendants are entitled to summary judgment dismissing this part of the Labor Law § 241(6)

claim.

b.       *Industrial Code 12 NYCRR 23-1.7(e)(2)*

Industrial Code 12 NYCRR 23-1.7(e)(2) provides:

> (e) Tripping and other hazards
>
>> (2) Working areas.  The parts of floors, platforms and similar
>> areas where persons work or pass shall be kept free from
>> accumulations of dirt and debris and from scattered tools and
>> materials and from sharp projections insofar as may be
>> consistent with the work being performed.

Here, the parties agree that the accident location was a working area such that this

provision would apply.  It is also undisputed that the accident was not caused by an accumulation

of dirt, debris or scattered tools or materials.  At issue is whether the Conduit constitutes a sharp

projection and, if so, whether it was integral to the work being performed.

While the Warner defendants argue that the Conduit was, as a matter of law, not a sharp

projection, they make no substantive arguments regarding it.  Thus, they fail to establish, as a

matter of law, that the Conduit was not a sharp projection.

The First Department defines a sharp projection "to 'include any projection that is

"sharp" in the sense that it is clearly defined or distinct'" (*Kaufman v Capital One Bank [USA]

N.A.*, 188 AD3d 461, 462 [1st Dept 2020]; quoting *Leonard v 1251 Ams. Assoc.*, 241 AD2d 391,

393 [1st Dept 1997]).  Objects embedded into the floor that stick up have been found to be sharp

projections (*Gervasi v FSP 787 Seventh LLC*, 228 AD3d 459, 460 [1st Dept 2024] ["the steel pin

or nail left partially embedded in the floor was a 'sharp projection'"]; *Kaufman,* 188 AD3d at

461-462 [door saddle sticking up from the surrounding concrete floor constituted a sharp

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 13 of 24**

[* 13]

projection]; *Leonard,* 241 AD2d at 393 [door stop attached to concrete floor was sharp projection]).

Here, the Conduit was described as a piece of vertical conduit piping, jutting out of the floor approximately two inches, and there is thus sufficient evidence demonstrating that it may constitute a sharp projection.

Next, the moving defendants argue that the Conduit was an integral part of the work being performed and, therefore, liability cannot attach under this provision. When a tripping hazard, such as a sharp projection, is integral to the work, section 23-1.7(e)(1) and (2) will not apply (*see e.g. Conlon v Carnegie Hall Society, Inc.,* 159 AD3d 655, 655 [1st Dept 2018][dismissing claim based on violations of 23-1.7(e) where extension cord that plaintiff tripped over was deemed integral part of work]; *Solis v 32 Sixth Ave. Co. LLC*, 38 AD3d 389, 390 [1st Dept 2007] [debris that the plaintiff tripped over was generated by his work and "constituted an integral part of that work"]). However, the integral to the work defense "applies only when the dangerous condition is inherent to the task at hand, and not . . . when a defendant or third party's negligence created a danger that was avoidable without obstructing the work or imperiling the worker" (*Bazdaric v Almah Partners LLC*, 41 NY3d 310, 320 [2024]).

Defendants' arguments that the Conduit was integral to the work rely on their assertion that the presence of any safety device would have been inconsistent with plaintiff's work of laying down Masonite and carpet masking. However, they fail to establish that the presence of a safety cone (or other protective device/paint markings) over the Conduit would have obstructed plaintiff's work such that it would have been impracticable or impossible for him to perform it.

To that end, plaintiff testified that, in the performance of his work, he could remove and replace safety cones if necessary, and there is testimony that there were "other options that would

159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC
Motion No.  003 004 005 006

Page 14 of 24

have achieved the goal of protecting the worker from injuries" (*Bazderic,* 41 NY3d at 321) – such as spray painting the Conduit to increase its visibility – that would not have impacted or interfered with plaintiff's work. In addition, Unity's witness testified that conduit should be covered, as uncovered conduit posed a safety hazard, while plaintiff testified that the Conduit was never covered.

To the extent that the moving defendants argue that plaintiff was the sole proximate cause of his accident, because he purportedly removed the safety cone from the Conduit, the record contains no evidence supporting such a position. As noted above, plaintiff testified that there were never safety cones over the conduits on the subject floor, and no one testified that cones were, in fact, present, or that plaintiff removed them.

Given the foregoing, the moving defendants have failed to establish entitlement to summary judgment dismissing the Labor Law § 241(6) claim predicated upon a violation of 12 NYCRR 23-1.7(e)(2).

### C. Common-Law Negligence and Labor Law § 200 Claims (Motion Sequence Number 004, 005 and 006)

Eurotech, the Warner defendants and Unity move for summary judgment dismissing the common-law negligence and Labor Law § 200 claims against them.

"Labor Law § 200 is a codification of the common-law duty of landowners and general contractors to provide workers with a reasonably safe place to work" (*Rodriguez v Metro. Transportation Auth.*, 191 AD3d 1026 [2d Dept 2021] citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Labor Law § 200(1) states, in pertinent part, as follows:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so

**159183/2019  BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 15 of 24**

15 of 24

placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

There are two distinct standards applicable to section 200 cases, depending on the situation involved: (1) when the accident is the result of the means and methods used by a contractor to do its work, and (2) when the accident is the result of a dangerous condition that is inherent in the premises (*see McLeod v Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Sts.,* 41 AD3d 796, 797-798 [2d Dept 2007]; *see also Griffin v New York City Tr. Auth.*, 16 AD3d 202, 202 [1st Dept 2005]).

Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work (*Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024]; *DaSilva v Toll First Ave., LLC,* 199 AD3d 511, 513 [1st Dept 2021]). Specifically, "liability can only be imposed against a party who exercises *actual* supervision of the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 11 [1st Dept 2012]).

Where an injury stems from a dangerous condition on the premises, an owner may be liable in common-law negligence and under Labor Law § 200 "'when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice'" (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011], quoting *Chowdhury v Rodriguez*, 57 AD3d 121, 128 [2d Dept 2008]).

Here, the accident occurred when plaintiff tripped over the uncovered and unmarked Conduit embedded into the floor. Accordingly, the accident implicates both the means and methods of the work (the failure to cover and/or mark the Conduit), and a dangerous condition (the presence of the embedded Conduit itself).

**159183/2019 BOGART, RYAN vs. WARNER MEDIA, LLC
Motion No. 003 004 005 006**

**Page 16 of 24**

16 of 24

[* 16]

### a. The Warner defendants

Here, the record establishes that the Warner defendants (as owner/tenant) did not exercise actual supervision or control over the installation and securing of the Conduit (*Naughton*, 94 AD3d at 11) or over plaintiff's work (*Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024] [dismissing common-law and section 200 claims where "there is no evidence that (the moving defendants) actually exercised control over the means and methods of plaintiff's work"]).  Plaintiff does cite to any evidence that would give rise to a question of fact on this issue.

As to the hazardous condition analysis, the Warner defendants did not create the subject condition, nor is there any evidence that they had actual knowledge of the condition.  Further, the Warner defendants argue that they also did not have constructive notice of any hazard.

"A defendant is charged with constructive notice of a defective condition when the condition is visible, apparent, and exists for a sufficient length of time prior to the happening of an accident to permit the defendant to discover and remedy it" (*Lopez v Dagan*, 98 AD3d 436, 438 [1st Dept 2012]).  To establish that a condition did not exist for a sufficient length of time, a moving defendant must submit evidence of "when the site had last been inspected before the accident" (*Pereira v New School,* 148 AD3d 410, 413 [1st Dept 2017]; *Padilla v Touro Coll. Univ. Sys.,* 204 AD3d 415, 415-416 [1st Dept 2022] [denying the defendant's summary judgment motion on the Labor Law § 200 claim where no evidence was provided of "the last time the site was inspected"]).

The Warner defendants fail to submit evidence of the last time the accident location was inspected before plaintiff's accident.  Moreover, the Warner defendants' argument that

159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC
Motion No.  003 004 005 006

Page 17 of 24

constructive notice cannot be established because the Conduit was a latent defect that would not have been discoverable upon reasonable inspection is unpersuasive.

"In moving for summary judgment on the ground that [a] defect was latent, a defendant must establish, prima facie, that the defect was indeed latent – i.e. that it was not visible or apparent and would not have been discoverable upon a reasonable inspection" (*Doherty v 730 Fifth Upper, LLC,* 227 AD3d 606, 608 [1st Dept 2024] [internal quotation marks and citations omitted]).  Here, the Warner defendants provide no proof that the Conduit would not have been discoverable upon reasonable inspection.

Given the foregoing, the Warner defendants have not established a lack of constructive notice and are not entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against them.

### b.        *Eurotech*

Eurotech establishes that it was a carpentry contractor for the Project, and as mentioned previously, testimony further establishes that Eurotech did not install conduit.  Similarly, the record is silent with respect to whether Eurotech created or had any knowledge (actual or constructive) of any hazard.  Further, there is no evidence establishing that Eurotech had any duty to protect with respect to the Conduit or the accident location, such that it could be found negligent for failing to cover it.

Accordingly, Eurotech is entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against it.

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 18 of 24**

### c.     Unity

As to Unity, there is testimony supporting that it was the entity responsible for the Conduit, as well as testimony raising questions as to whether the Conduit was the type of conduit that Unity installed.

Given the foregoing conflicting testimony, there remain questions of fact as to whether Unity was responsible for securing the subject Conduit, and whether it created the condition that caused the accident. Accordingly, Unity is not entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against it.

### D.     *Second Third-Party Contractual Indemnification Claim Against Unity (Motion Sequence Number 005)*

The Warner defendants move for summary judgment in their favor on their second third-party contractual indemnification claim against Unity.

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Drzewinski v Atlantic Scaffold & Ladder Co.,* 70 NY2d 774, 777 [1987], quoting *Margolin v New York Life Ins. Co.,* 32 NY2d 149, 153 [1973]; *see also Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004]).

"In contractual indemnification, the one seeking indemnity need only establish that it was free from any negligence and was held liable solely by virtue of the statutory liability" (*Correia v Professional Data Mgt.,* 259 AD2d 60, 65 [1st Dept 1999]; *see also Murphy v WFP 245 Park Co., L.P.*, 8 AD3d 161, 162 [1st Dept 2004]). Unless the indemnification clause explicitly requires a finding of negligence on behalf of the indemnitor, "[w]hether or not the proposed indemnitor was negligent is a non-issue and irrelevant" (*Correia,* 259 AD2d at 65).

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 19 of 24**

Structure and Unity entered into a subcontract agreement, dated November 3, 2017

(NYSCEF Doc. No. 167) (the Structure/Unity Agreement), which contains an indemnification

provision that provides:

> To the fullest extent by Law, [Unity] will indemnify and hold
> harmless [Structure], the owner of the project, the owner of the
> property where the job/project is located, and all parties required to
> be indemnified by the prime contract entered into by [Structure] in
> connection with the job/project work . . . arising in whole or in part
> and in any manner from the acts, omissions, breach or default of
> [Unity] . . . in connection with the performance of any work by
> [Unity].

(*id.* ¶ 11.2).

The Agreement also includes a scope of work provision which references "conduit" and

"stub-ups," and specifically mentions that Unity "shall furnish and install all conduits and

sleeves dedicated for each fitout floor from the connection point that has been previously

installed" (*id.* at 3, 5).

Here, the testimony regarding Unity's work at the Project is conflicting. While plaintiff

and Pervan testified that Unity was likely the entity responsible for the Conduit, they were not

certain. Similarly, while the Agreement includes the installation of conduits as Unity's

responsibility, no one definitively testified that the subject Conduit was the type of conduit that

fell within Unity's scope of work, and Unity's witness testified that it did not look like the type

of conduit Unity typically installed.

Given the foregoing, there remains an unresolved question of fact as to whether the

Conduit fell within Unity's scope of work and, therefore, whether the accident arose "in

connection with the performance" of Unity's work. Accordingly, the Warner defendants are not

entitled to summary judgment in their favor on their contractual indemnification claim against

Unity.

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**                                    **Page 20 of 24**
  **Motion No.  003 004 005 006**

[* 20]                                                      20 of 24

### E.      Second Third-Party Contractual Indemnification Claim Against Forest (Motion Sequence Number 003)

Forest moves for summary judgment dismissing the Warner defendants' contractual indemnification claim as against it.

Forest and Structure entered into a "Master Subcontract Agreement", dated December 17, 2015 (but countersigned by Forest on January 19, 2016) (NYSCEF Doc. No. 116) (the Forest/Structure Master Agreement).  Pursuant to the Forest/Structure Agreement, Forest and Structure entered into a subcontractor agreement for the Project, dated May 16, 2017 (*id.* p 2-7) (the Forest/Structure Agreement).  Both agreements have indemnification provisions, but the active provision is found in the master agreement (Forest/Structure Agreement, ⁋ 11).

The Forest/Structure Master Agreement's indemnification provision provides the following:

> To the fullest extent permitted by law, [Forest] shall indemnify,
> defend and hold harmless [Structure], the Owner, the Architect and
> all of their parents, subsidiaries, affiliates, agents, officers and
> employees from and against all claims . . . arising out of, or
> resulting from the performance, or failure in performance, of
> [Forest's] Work and obligations . . . [which] is caused in whole or
> in part by any acts, omissions or negligence of [Forest] or anyone
> directly or indirectly employed by [Forest] . . .

(NYSCEF Doc. No. 116).

Here, Forest argues that its contractual scope of work does not include installing the type of conduit that caused plaintiff's accident, relying on its witness's testimony.  In addition, no one testified that Forest was responsible for installing or securing the subject conduit, and no one identifies the installation and securing of such conduit as within Forest's scope of work.

Absent evidence establishing that Forest was responsible for the installation or securing of the subject Conduit, the accident did not "aris[e] out of, or result[] from the performance, or

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC
Motion No.  003 004 005 006**

**Page 21 of 24**

[* 21]

failure in performance, of [Forest's] Work and obligations" (*id.*) (*see DeGidio v City of New York,* 176 AD3d 452, 454 [1st Dept 2019] [dismissing contractual indemnification claim where subcontractor "played no role" in "maintenance or operation" of accident-causing object]). Accordingly, Forest is entitled to summary judgment dismissing the contractual indemnification claim against it.

**F.      *The Warner Defendants' Second Third-Party Common-Law Indemnification and Contribution Claims Against Forest (Motion Sequence Number 003)***

Forest moves for summary judgment dismissing the second third-party common-law indemnification and contribution claims against it.

"To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident'" (*Pena v Intergate Manhattan LLC*, 194 AD3d 576, 578 [1st Dept 2021], quoting *Correia,* 259 AD2d at 65).

"Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 61 [2d Dept 2003] [internal quotation marks and citations omitted]).

As discussed above, as there is no testimony or evidence that establishes that Forest had a duty of care with respect to the subject condition, or the securing thereof, or that it breached any duty that caused plaintiff's accident, Forest is entitled to summary judgment dismissing the Warner defendants' common-law indemnification and contribution claims against it.

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**                    **Page 22 of 24**
**Motion No.  003 004 005 006**

[* 22]                            22 of 24

*G.      The Warner Defendants' Second Third-Party Breach of Contract for the Failure to Procure Insurance Claim Against Forest (Motion Sequence Number 003)*

Forest moves for summary judgment dismissing the breach of contract for the failure to procure insurance claim brought by the Warner defendants.  As the Warner defendants do not oppose dismissal of this claim, it is dismissed.

*H.      Unity and Eurotech's Cross-claims Against Forest (Motion Sequence Number 003)*

Forest moves for summary judgment dismissing the cross-claims against it.  As Eurotech and Unity do not oppose this part of Forest's motion (NYSCEF Doc. No. 122), the cross-claims are dismissed.

The parties' remaining arguments have been considered and were unavailing.

## III.      CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of second third-party defendant Forest Electric Corp. (motion sequence number 003), pursuant to CPLR 3212, for summary judgment dismissing the second third-party complaint and all cross-claims against it is granted, and the second third-party complaint is severed and dismissed as against Forest Electric Corp.; and it is further

**ORDERED** that the motion of defendant Eurotech Construction Corp. (Eurotech) (motion sequence number 004), pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it is granted, and the complaint is dismissed as against Eurotech; and it is further

**ORDERED** that the branch of the motion of defendant ERY Tenant, LLC, and defendant/second third-party plaintiffs Warner Media, LLC (Warner) and TW NY Properties, LLC (TW) (together the Warner defendants) (motion sequence number 005), pursuant to CPLR

3212, for summary judgment dismissing the complaint as against ERY, is granted and the complaint is severed and dismissed as against ERY; and it is further

**ORDERED** that the branch of the Warner defendants' motion, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against them, and for summary judgment in their favor on their contractual indemnification claims against defendant/second third-party defendant Unity Electric Co. Inc. (Unity) is granted to the extent that the Labor Law § 240(1) claim and all Labor Law § 241(6) claims except for the claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7(e)(2) are dismissed as to the Warner defendants; and the motion is otherwise denied; and it is further

**ORDERED** that Unity's motion (motion sequence number 006), pursuant to CPLR 3212, for summary judgment dismissing the complaint as against it is granted to the extent that the Labor Law § 240(1) claim and all Labor Law § 241(6) claims except for the claim predicated upon a violation of Industrial Code 12 NYCRR 23-1.7(e)(2) are dismissed as to Unity; and the motion is otherwise denied.

20250421180352DC0HEN32EAE24AC0EE4A05B1C6AE16EEC630EE

_____
**4/21/25**
**DATE**

_____
**DAVID B. COHEN, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**159183/2019   BOGART, RYAN vs. WARNER MEDIA, LLC**
**Motion No.  003 004 005 006**

**Page 24 of 24**

24 of 24