[919 NYS2d 129]

JOSE MENDOZA, Respondent, v HIGHPOINT ASSOCIATES, IX, LLC, Appellant.

First Department, March 8, 2011

**APPEARANCES OF COUNSEL**

*Havkins Rosenfeld Ritzert & Varriale, LLP*, New York City (*Jonathan A. Judd* and *Shanna R. Torgerson* of counsel), for appellant.

*Davidson & Cohen, P.C.*, Rockville Centre (*Robin Mary Heaney* of counsel), for respondent.

**OPINION OF THE COURT**

RENWICK, J.

Plaintiff Jose Mendoza brought this action for injuries sustained during a fall while he was on a roof to inspect damage and determine the extent of necessary repairs. Plaintiff asserts claims under Labor Law § 240 (1), § 241 (6) and § 200, and

common-law negligence. During the discovery process, defendant refused to produce an employee of the subject property for a deposition. As a result, Supreme Court ultimately precluded defendant from introducing evidence at trial with respect to liability.

Defendant does not dispute that Supreme Court appropriately exercised its discretion to fashion a remedy for its failure to comply with discovery demands. What defendant disputes is Supreme Court's subsequent determination that the preclusion order ipso facto prevented it from making a motion for summary judgment on the ground that plaintiff would not be able to make a prima facie case on liability. For the reasons explained below, we find the preclusion order did not prevent defendant from making such a motion. Accordingly, we entertain the motion on the merits.

### Factual and Procedural Background

The alleged roof accident occurred in April 2006, at the premises known as 81-11A Broadway Avenue, Elmhurst, New York, a vacant one-story commercial building. This action was commenced in March 2007 against defendant Highpoint Associates IX, LLC (Highpoint), the owner of the premises. Plaintiff's deposition took place on November 5, 2008, at which time he testified that on the date of the accident, he was employed by Keystone Management (Keystone) as a property manager. Keystone's headquarters were located in California, but the entity also managed numerous properties in New York City. Plaintiff supervised nine Keystone employees at various properties in the city, including the instant premises. Plaintiff's supervisor in California was Raha Arna who was no longer employed by Keystone at the time this action was commenced.

At the time of the accident, plaintiff was "assessing" a damaged roof. The previous day, Arna had told plaintiff that there was a leak in the roof, and directed him to assess the damage and fix it. Plaintiff testified that the leaking started during the summer of 2005, at which time debris covered a large part of the roof, further straining it. Arna had instructed plaintiff to have the debris removed by Keystone employees. The employees, however, complained that the roof did not feel right, and plaintiff informed Arna that the roof was "flimsy" and "not too safe." Plaintiff, at Arna's direction, took photos and e-mailed them to Arna. Plaintiff was aware that prior tenants had complained, at least since 2005, to Keystone and the building

owner about leaks in the roof; plaintiff heard about the complaints from Arna, but he did not know to whom the complaints were made.

Prior to the accident, plaintiff was "doing a walk-through" on the roof, assessing what repairs were necessary and what materials would be required, and taking down notes. At one point, after about one-half hour, he stopped near the middle of the roof. The roof then "started to buckle" causing him to fall to his right side and land on his knee. As plaintiff explained, prior to his fall, the roof under his right foot started to "sink, to give way . . . about maybe an inch and a half, two inches," which "threw [plaintiff] off to the side," and caused him to fall onto his right knee, coming into contact with a piece of metal, "like a conduit pipe," on a conduit platform.

Daniel Shalom, the president of Keystone, was deposed on March 13, 2009. Shalom, a resident of California, testified that he was the sole shareholder of Keystone, which managed about 30 buildings, about half in the city and the other half in California. Shalom denied having any ownership interest in Highpoint but admitted he had such interest in several similarly named entities, which owned properties in the city. He claimed that his sister, Amy Shalom, was the sole owner of Highpoint.

Shalom remembered discussing the roof leaks with plaintiff and directing him to inspect the roof. Although Shalom kept records of tenants' complaints for the various properties he managed, he did not bring any of them to the deposition; they remained in California. However, he remembered reviewing records revealing that the entire roof of the Elmhurst property had to be replaced in May 2006 because of leaks.

Because of the repeated failures to comply with discovery demands, by order dated May 5, 2009, Supreme Court precluded Highpoint from introducing evidence at trial unless, within 45 days of the order, defendant produced employees who had personal knowledge of facts related to the instant accident. Defendant was also directed to produce copies of all violations on the building for the year preceding plaintiff's accident. By its terms, the order was self-executing, specifically directing that defendant's failure to comply would result in preclusion of evidence at trial as to liability.

Defendant failed to produce any witness for a deposition. Nor did defendant appeal from the preclusion order. Instead, defendant moved for summary judgment on the ground, inter alia, that plaintiff would not be able to make out a prima facie case

on liability for any of the claims asserted against it. Plaintiff opposed and cross-moved for summary judgment. Supreme Court refused to hear defendant's motion on the ground that the preclusion order prevented defendant from presenting any evidence at trial on liability. Likewise, Supreme Court denied plaintiff's cross motion as untimely. Defendant appeals from the refusal to entertain its motion and seeks a dismissal of the action.

## Discussion

### A.

As a threshold procedural issue, we find no legal impediment to examining the merits of defendant's motion for summary judgment. Contrary to Supreme Court's determination, the fact that defendant was precluded from presenting evidence at trial on liability did not affect its right to move for summary judgment. Generally, a defendant's preclusion from introducing evidence at trial does not automatically entitle a plaintiff to summary judgment (*see Northway Eng'g v Felix Indus.*, 77 NY2d 332 [1991]; *Rosario v Humphreys & Harding*, 301 AD2d 406 [2003]). Indeed, a preclusion order does not relieve the plaintiff of the burden of proving its case (*see Northway*, 77 NY2d at 337; *Murphy v Herbert Constr. Co.*, 297 AD2d 503 [2002]; *Israel v Drei Corp.*, 5 AD2d 987 [1958]); nor does it preclude affirmative defenses (*see e.g. Ramos v Shendell Realty Group, Inc.*, 8 AD3d 41 [2004] [affirmative defense of comparative negligence still a viable defense despite the preclusion order]; *Mendez v Queens Plumbing Supply, Inc.*, 12 Misc 3d 1064 [Sup Ct, Bronx County 2006] [same]; *see also Moskowitz v Garlock*, 23 AD2d 943 [1965]). Therefore, a preclusion order preventing evidence at trial on liability is unlike the striking of an answer, which effectively resolves a claim against the nondisclosing defendant (*see Rokina Opt. Co. v Camera King*, 63 NY2d 728 [1984]).

Accordingly, summary judgment should be granted where the nondisclosing defendant can establish entitlement to such relief despite the preclusion order barring it from offering its own affirmative evidence as to liability. This Court's determination in *Murphy v Herbert Constr. Co.* (297 AD2d 503 [2002]) aptly illustrates the point. In *Murphy*, the plaintiff moved for summary judgment on liability pursuant to Labor Law § 241 (6), and the defendant subcontractor cross-moved for summary judgment

dismissal of the claims under Labor Law § 240 (1) and § 241 (6). Supreme Court granted plaintiff summary judgment and denied defendant's cross motion in its entirety. This Court reversed and granted the nondisclosing defendant summary judgment despite the fact that the motion court had precluded it from presenting evidence at trial on liability. Specifically, this Court dismissed the Labor Law § 240 (1) and § 241 (6) claims asserted against the subcontractor because the plaintiff's evidence failed to allege a key element of such claims (*id.* at 504).

Plaintiff's reasoning for distinguishing *Murphy*—adopted by the dissenters—is not persuasive. Plaintiff argues that *Murphy* is inapplicable, in that the plaintiff there was the movant, but failed to produce any evidence establishing a prima facie case, a fundamentally different procedural posture from that at issue here. Plaintiff contends that, since defendant has the burden of establishing a prima facie case on its motion for summary judgment through the tendering of evidence and it is barred from tendering such evidence because of the preclusion order, it cannot meet its burden.

The divergent posture of this case vis-à-vis *Murphy* changes nothing. What is significant is that in both cases the preclusion order did not bar the defendant from challenging the sufficiency of the plaintiff's evidence; the answer was not stricken and the preclusion did not extend beyond limiting the defendant's affirmative evidence at trial on liability. The application of the remedy of preclusion to a specific category of evidence, as applied against a defendant, should not be a device for precluding a defendant from challenging the sufficiency of the plaintiff's evidence. In fact, courts have consistently held that a defendant may establish its prima facie entitlement to judgment as a matter of law by relying upon the plaintiff's evidence, including the plaintiff's own deposition, which may negate liability (*see e.g. Acheson v Shepard*, 27 AD3d 596 [2006]; *Wellington v Manmall, LLC*, 70 AD3d 401 [2010]).

For example, in *DeSantis v Lessing's, Inc.* (46 AD3d 742 [2007]), the defendant established its prima facie entitlement to judgment as a matter of law by submitting the plaintiff's deposition testimony, in which she was unable to explain what caused her to trip and fall. Similarly, in *Frank v Time Equities* (292 AD2d 186 [2002]), this Court held that "[w]hile a defendant moving for summary judgment [in a slip-and-fall case] has the burden of demonstrating entitlement to dismissal as a matter of law, there is no need for a defendant to submit eviden-

tiary materials . . . where the plaintiff failed to claim the existence of notice of the condition" (*id*. at 186). Thus, while *Murphy* arose in a different procedural context, its ruling underscores the basic rule applicable here: that a defendant can prevail at the summary judgment stage by challenging the sufficiency of the plaintiff's evidence.

Indeed, it cannot be seriously disputed that a preclusion order does not prevent a defendant from challenging a plaintiff's evidence at trial by moving for a directed verdict at the end of the plaintiff's case on the ground that the latter has failed to make a prima facie case. It is also beyond cavil that a motion for summary judgment is the procedural equivalent of a trial (*see Crowley's Milk Co. v Klein*, 24 AD2d 920 [1965]). In fact, CPLR 3212 (b) implicitly draws an analogy between the motion for summary judgment and the motion for a directed verdict made at trial.[1] In each instance, the court is taking the case away from the factfinder by determining that there is nothing to try. Of course, the main difference is that on a summary judgment motion the judge is asked to decide the issue on papers alone while in a motion for a directed verdict, the judge has the advantage of hearing live testimony.

Significantly, we perceive no imperative policy consideration that militates against allowing by summary judgment motion what a defendant can do at trial. Contrary to the dissenters' assertions, such determination does not "undermine the point of the order." On the contrary, while the purpose of a preclusion order is to make the demanding party whole (*see Northway*, 77 NY2d at 337), whatever disadvantage plaintiff sustained as a result of defendant's failure to provide the required discovery was overcome when Supreme Court effectively prohibited defendant from offering its own affirmative evidence at trial on liability. To further preclude defendant from making a motion for summary judgment to challenge plaintiff's evidence—as a defendant can do at trial—would give plaintiff more relief than is warranted (*id*.).

For the foregoing reasons, we are satisfied that the preclusion order does not constitute a procedural bar to this Court's proper disposition of defendant's motion for summary judgment on the merits. To be sure, as plaintiff correctly points out, we are mindful of the fact that defendant, by its own failure to comply with

---

1. The motion for a directed verdict, although still called that in practice, is officially known today as a motion for judgment during trial (*see* CPLR 4401).

the conditional preclusion order, should be barred from offering its own affirmative evidence as to liability, either at trial or on the motion, regardless of the order's reference to "at trial." The result, otherwise, would perversely undermine the point of the order by allowing defendant to benefit from the shortcut of summary judgment by use of the same evidence that otherwise would have been barred at trial. Hence, for present purposes, all of defendant's affirmative evidence is precluded.[2]

### B.

With this evidentiary constraint in mind, we now examine defendant's motion for summary judgment on the merits. We first turn to the claims under common-law negligence and Labor Law § 200. Labor Law § 200 codifies the common-law duty of an owner or an employer to provide a safe workplace; it is tantamount to a common-law negligence claim in a workplace context (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]; *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Where, as here, the accident arises not from the methods or manner of the work, but from a dangerous premises condition, "a property owner is liable under Labor Law § 200 when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice" (*Chowdhury v Rodriguez*, 57 AD3d 121, 128 [2008]; *see also Schultz v Hi-Tech Constr. & Mgt. Servs., Inc.*, 69 AD3d 701 [2010]; *Artoglou v Gene Scappy Realty Corp.*, 57 AD3d 460 [2008]).

■ Here, from plaintiff's testimony, it is apparent that the roof started to leak at least in or before 2005, a year prior to the incident, and Keystone and defendant were aware of that. That the surface of the roof was in some degree compromised was thus known to the managing agent and, at least by reasonable imputation, to the owner, defendant. At that time, plaintiff reported that the roof seemed unstable and was "flimsy." This lays the factual basis for plaintiff arguing at trial that the long-term, chronically uncorrected, water seepage through the roof placed it in a state of disrepair destabilizing its surface, providing constructive notice that the roof as a whole posed a danger-

---

2. The dissent incorrectly points out that "in essence, defendant merely submitted a notice of motion and counsel's affirmation," when in fact defendant supported its motion with the deposition testimony of plaintiff, among others.

ous condition to any worker sent to walk around on it. Under the circumstances, it cannot be said that plaintiff's testimony negates any common-law negligence or Labor Law § 200 claim.

The same factual allegations that support a claim under the common law/Labor Law § 200—defendant commanded plaintiff to inspect the roof despite its apparent knowledge that the roof was in a "flimsy" condition and that plaintiff was not adequately protected against the dangers of the job—also support a Labor Law § 240 (1) claim.

We reject defendant's argument that plaintiff was involved only in routine maintenance, which is not a covered activity under section 240 (1). Although the extent of plaintiff's responsibilities for repair of the roof is uncertain, especially since his injuries obviously prevented him from performing any subsequent roofing work, he indicated that he and his workers would perform the work. Thus, a fair reading of plaintiff's testimony indicates that at a minimum he was an integral part of the repair work, which, under ordinary circumstances, would proceed under his supervision, and that it was an imminent event and not merely a possible future task (*Caraciolo v 800 Second Ave. Condominium*, 294 AD2d 200 [2002] [building engineer's inspection of a rooftop water tank was a covered activity under Labor Law § 240 (1) rather than routine maintenance since it was done in furtherance of the repair of an apparent malfunction]).

Nor do we find any merit to defendant's argument that plaintiff's testimony does not raise an issue of fact as to whether his injuries resulted from a gravity-related hazard that brought about the need for a safety device. Consistent with the principle that "the determination of the type of protective device required for a particular job [and thus whether section 240 (1) is implicated] turns on the foreseeable risks of harm presented by the nature of the work being performed" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 268 [2007], *lv denied* 10 NY3d 710 [2008]), this Court recently held in *Jones v 414 Equities LLC* (57 AD3d 65 [2008]), and reiterated in *Espinosa v Azure Holdings II, LP* (58 AD3d 287 [2008]), that to prevail on a Labor Law § 240 (1) claim based on an injury resulting from the failure of a completed and permanent building structure, "the plaintiff must show that the failure of the structure in question 'was a foreseeable risk of the task he was performing' " (*Espinosa* at 291, quoting *Jones* at 80), creating a need

for protective devices of the kind enumerated in the statute (*Espinosa* at 291-292).[3]

In *Espinosa,* the plaintiff, a worker on a gut rehabilitation project, was injured when the sidewalk on which he was standing collapsed due to the failure of the cellar vault below it (58 AD3d 287). This Court reversed the trial court's dismissal of the Labor Law § 240 (1) claim because the evidence of the building's deteriorated condition raised a triable issue of fact as to whether the collapse of the sidewalk due to the failure of a corroded steel support beam in the cellar vault ceiling was a foreseeable risk that gave rise to the need for the kind of safety devices enumerated in the statute (*id.* at 289).

Prior to *Jones* and *Espinosa,* the Second Department had also held that where the building's structure in which the plaintiff was performing work was in a state of disrepair, that condition is sufficient to raise a triable issue as to whether the plaintiff's work "exposed him to a foreseeable risk of injury from an elevation-related hazard" (*Shipkoski v Watch Case Factory Assoc.,* 292 AD2d 587, 589 [2002]). In *Shipkoski,* the plaintiff's employer had contracted to board up broken windows in a vacant building. The plaintiff "allegedly was injured when, as he was walking on the deteriorated third floor measuring windows for the installation of plywood, the floor gave way and he fell through" (*id.* at 588). The Court affirmed the denial of the plaintiff's motion for summary judgment on his Labor Law § 240 (1) claim because there were

> "issues of fact as to whether the building was in such an advanced state of disrepair and decay from neglect, vandalism, and the elements that the plaintiff's work on the third floor exposed him to a foreseeable risk of injury from an elevation-related

---

**3.** [3] Justice Acosta's writing takes exception to our reliance on *Jones* and its progeny, which it finds "legally unsound" for improperly injecting a foreseeability requirement into a Labor Law § 240 (1) analysis. We, however, find *Jones* consistent with Court of Appeals precedent (*see e.g. Gordon v Eastern Ry. Supply,* 82 NY2d 555, 562 [1993] ["(t)o establish a prima facie case (of a violation of Labor Law § 240 [1]) plaintiff need not demonstrate that the precise manner in which the accident happened or the injuries occurred was foreseeable; it is sufficient that he demonstrate that the risk of some injury from defendants' conduct was foreseeable"]). As this Court recently pointed out in *Vasquez v Urbahn Assoc. Inc.* (79 AD3d 493, 495-496 [2010]), "While it is true that Labor Law § 240 (1) fails to mention any foreseeability requirement as a predicate to its violation, a foreseeability requirement must necessarily be imputed as to every claim pursuant thereto, when as here, the claim is premised on a collapsing permanent structure."

hazard, and whether the absence of a type of protective device enumerated under Labor Law § 240 (1) was a proximate cause of his injuries" (292 AD2d at 589).

Here, as in *Espinosa* and *Shipkoski*, there is evidence, as fully detailed above, suggesting that the roof was in a state of disrepair due to the long-term, chronically uncorrected, water seepage through the roof that had destabilized its surface. Such evidence clearly raises an issue of fact as to whether it was foreseeable that the roof would buckle. It is immaterial that the roof did not collapse since a plaintiff need not completely fall from the roof in order to recover under Labor Law § 240 (1) as long as the injury resulted from an elevation-related hazard (*see Dominguez v Lafayette-Boynton Hous. Corp.*, 240 AD2d 310 [1997]; *Gramigna v Morse Diesel*, 210 AD2d 115 [1994]). Plaintiff's accident was certainly caused by the effects of gravity as he lost his balance and landed on his knee when the "flimsy, unstable" roof started to "buckle" and "sink" underneath his feet. Defendant is therefore not entitled to summary judgment since plaintiff's evidence raises a triable issue of fact as to whether the flimsy, unstable condition of the roof exposed plaintiff to a foreseeable risk of injury from an elevation-related hazard, and whether the absence of a protective device enumerated under Labor Law § 240 (1) was a proximate cause of his injuries.

We reach a different result with regard to plaintiff's Labor Law § 241 (6) claim. To prevail on a cause of action pursuant to Labor Law § 241 (6), a plaintiff must prove a violation of a provision of the Industrial Code that sets forth a specific safety standard (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]). Here, plaintiff's claim under that section is based on an alleged violation of 12 NYCRR 23-1.7 (e) (2), which provides that floors, platforms and similar working areas "shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed." That regulation, however, does not apply here because the metal pipe that plaintiff allegedly collided with, when he was on the roof inspecting the damage and determining the extent of necessary repairs, is not a tripping hazard that falls within 12 NYCRR 23-1.7 (e) (2). That is, since the pipe was on the roof prior to commencement of the work in connection to the roof repair, it was not left there as a result of the "work being performed" (*see*

*Dalanna v City of New York*, 308 AD2d 400 [2003] [plaintiff, who tripped over a protruding bolt while carrying a pipe across an outdoor 50-foot-long concrete slab, could not recover under section 241 (6) since the bolt, which was embedded in the ground, was not "dirt," "debris," "scattered tools and materials," or a "sharp projection( )," as required by 12 NYCRR 23-1.7 (e) (2)]). Plaintiff's version of the accident, therefore, negates any 12 NYCRR 23-1.7 (e) (2) violation.

## Conclusion

Accordingly, the order of the Supreme Court, Bronx County (Norma Ruiz, J.), entered on or about April 12, 2010, which, insofar as appealed from as limited by the briefs, denied defendant's motion for summary judgment dismissing the complaint, should be modified, on the law, to the extent of granting defendant summary judgment on plaintiff's Labor Law § 241 (6) claim, and otherwise affirmed, without costs.

Acosta, J. (concurring in part and dissenting in part). I disagree with the majority's assessment of the "threshold procedural issue," namely, whether the preclusion order prevented defendant from submitting evidence in support of its summary judgment motion. Instead, I agree with plaintiff that defendant, by its own failure to comply with the conditional preclusion order, should be barred from offering affirmative evidence as to liability, either at trial or on the motion, regardless of the order's reference to "at trial." Indeed, the majority acknowledges that allowing defendant to submit its own affirmative evidence on liability in support of its summary judgment motion would "undermine the point of the order by allowing defendant to benefit from the shortcut of summary judgment by use of the same evidence that otherwise would have been barred at trial." Apparently categorizing evidence as for either plaintiff or the defense, the majority condones defendant's use of plaintiff's deposition testimony to support its motion because it was given by plaintiff and it is therefore not defendant's affirmative evidence. I disagree. The fact that defendant used plaintiff's deposition testimony makes it defendant's evidence.

The majority grounds its holding on various legal precepts, none of which are dispositive of the issue. Initially, it posits that "a preclusion order does not relieve the plaintiff of the burden of proving its case." While this precept is true, the majority simply ignores the different burdens of defendant at trial, where it can simply wait for evidence to be introduced by plaintiff, and

on summary judgment, where it has the burden, as movant, to come forward with evidence in admissible form (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). In the context of a summary judgment motion, assuming a defendant establishes its prima facie entitlement to relief, the burden shifts to the plaintiff, not to prove its case, but merely to raise triable issues of fact (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Significantly, the burden shifts only if the defendant first establishes its prima facie entitlement. To do so, it must submit papers, including supporting evidence (*id.*). Here, inasmuch as defendant was precluded from submitting any evidence on liability, in essence, defendant merely submitted a notice of motion and counsel's affirmation, which are insufficient for summary judgment (*see Zuckerman* at 563; *Di Sabato v Soffes*, 9 AD2d 297, 300-301 [1959]). That the preclusion order did not preclude defendant from raising affirmative defenses, such as comparative negligence as the majority notes, is of no moment.

The majority also posits that if the case had gone to trial, the order would not have prevented defendant from moving for a directed verdict based on the evidence presented by plaintiff. However, that is not the posture of this case. In a trial, a preclusion order would not prevent defendant from using any evidence properly introduced by plaintiff. Thus, a trial judge can rule on a directed verdict motion based on the body of evidence before it. Here, however, as noted above, there was no evidence properly put forth in defendant's moving papers. And, unlike a trial where the plaintiff has the ultimate burden, in the context of a summary judgment motion, plaintiff can simply stay quiet unless defendant has established its prima facie right to summary judgment.

For this reason, the cases relied on by the majority are not on point. In *Murphy v Herbert Constr. Co.* (297 AD2d 503 [2002]), it was the plaintiff who initially moved for summary judgment. Thus, although the defendant was precluded from presenting any evidence, the court properly ruled on the defendant's cross motion for dismissal based on the body of evidence that had been properly presented by the plaintiff. Other cases cited by the majority are equally inapposite. In *DeSantis v Lessing's, Inc.* (46 AD3d 742 [2007]), the defendant, unlike in the present case, was not precluded from submitting evidence, which it did in the form of the plaintiff's deposition testimony. In *Frank v Time Equities* (292 AD2d 186 [2002]), a slip and fall case, not only was the defendant permitted to submit evidence, but the plaintiff failed to claim notice of condition (*see also Acheson v*

Shepard, 27 AD3d 596 [2006]; *Wellington v Manmall, LLC*, 70 AD3d 401 [2010]).

Accordingly, in my opinion, the motion court properly declined to entertain defendant's motion.[1]

Assuming for the sake of argument that the majority is correct on the "threshold procedural issue," I agree with its analysis with respect to the Labor Law §§ 200 and 241 (6) claims. With respect to the section 240 (1) claim, however, I concur with the result only inasmuch as there is no statutory requirement that a plaintiff establish that an injury was foreseeable to prevail on a section 240 (1) claim. Rather, as I stated recently in *Vasquez v Urbahn Assoc. Inc.* (79 AD3d 493, 498 [2010, dissenting mem]), the plain language of Labor Law § 240 (1) mandates that in covered activity,

> "contractors and owners '*shall* furnish' safety devices to workers (emphasis added). Nowhere is there a requirement that owners and contractors have to supply safety devices only when they divine there is a foreseeable risk of injury in a particular task because of the employee's relative elevation. Nor . . . is there a distinction in the statute between a permanent structure and a temporary structure" or, as the majority seems to be implying in the present case, between a structure and the "surface" of the structure.

The concept of foreseeability in the context of a section 240 (1) case was addressed by the Court of Appeals in *Gordon v Eastern Ry. Supply* (82 NY2d 555 [1993]), where it explicitly held that a "plaintiff need not demonstrate that the precise manner in which the accident happened or the injuries occurred was foreseeable; it is sufficient that he demonstrate that the risk of some injury from *defendants' conduct* was foreseeable" (*id.* at 562 [emphasis added]). In other words, "[i]t is enough that given the inherently dangerous conditions of work sites, it is foreseeable that an owner or contractor's failure to provide safety devices to workers, as here, may create an injury" (*Vasquez* at 497 [dissenting mem]).[2] The majority, without any statutory support, turns this concept on its head and places the

---

1. Although plaintiff cross-moved for summary judgment, the court declined to entertain that motion as well, finding that it was untimely filed. That portion of the order has not been appealed.

2. Accordingly, the plaintiff's section 240 (1) claim in *Gordon* was not dismissed by the Court notwithstanding that the injury was the result of an

burden on plaintiff instead. For this reason, cases such as *Jones v 414 Equities LLC* (57 AD3d 65 [2008]) and *Espinosa v Azure Holdings II, LP* (58 AD3d 287 [2008]), relied on heavily by the majority, are legally unsound.

Otherwise, I agree with the majority. Contrary to the defendant's assertion, the facts indicate that plaintiff's activity was not routine maintenance. Specifically, his testimony set forth that defendant and/or its managing agent Keystone was aware there was a chronic leaking problem which had to be repaired, that it was going to be repaired and that plaintiff was directed to go to the roof for the purpose of commencing the repair operation, where he and his workers would perform the work.

Thus, I agree with the majority that a fair reading of plaintiff's testimony indicates that plaintiff's inspection of the rooftop was a covered activity under Labor Law § 240 (1), rather than routine maintenance, since it was done in furtherance of the repair (*Caraciolo v 800 Second Ave. Condominium*, 294 AD2d 200, 201-202 [2002] [building engineer's inspection of a rooftop water tank was a covered activity under Labor Law § 240 (1) rather than routine maintenance, since it was done in furtherance of the repair of an apparent malfunction]). Moreover, as the majority correctly found, plaintiff's injury resulted from an elevation-related hazard even though the roof did not completely cave in (*see Dominguez v Lafayette-Boynton Hous. Corp.*, 240 AD2d 310 [1997]; *Gramigna v Morse Diesel*, 210 AD2d 115 [1994]), and he was not provided with adequate protection devices. Indeed, under the circumstances, it is not improbable that had plaintiff been provided with roof brackets, toe boards, safety lines, belts or other safety devices, his body would not have collapsed in the manner in which it did, after the roof buckled underneath him. Since it appears that plaintiff was placed at an elevation-related risk (dilapidated roof) and that he was not adequately protected against the dangers of the job, defendant has not established that plaintiff cannot maintain a Labor Law § 240 (1) claim at trial. Accordingly, defendant was not entitled to summary dismissal of the Labor Law § 240 (1) claim.

Tom, J.P. (dissenting in part). I concur with Justice Acosta to the extent that the preclusion order requires denial of defendant's motion. Because defendant is barred from offering evi-

---

unforeseeable accident, that is, the malfunctioning sandblaster trigger (82 NY2d at 562).

dence on the issue of liability, it is unable to demonstrate its prima facie entitlement to summary judgment. Accordingly, it is unnecessary to consider the merits.

McGUIRE and FREEDMAN, JJ., concur with RENWICK, J.; ACOSTA, J., concurs in part and dissents in part in a separate opinion; TOM, J.P., dissents in part in a separate opinion.

Order, Supreme Court, Bronx County, entered on or about April 12, 2010, modified, on the law, to the extent of granting defendant summary judgment on plaintiff's Labor Law § 241 (6) claim, and otherwise affirmed, without costs.