| **Kelly v Metropolitan Transp. Auth.** |
|:---:|
| 2026 NY Slip Op 30657(U) |
| February 24, 2026 |
| Supreme Court, New York County |
| Docket Number: Index No. 151899/2022 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**    <u>HON. RICHARD TSAI</u>                     PART                    21
                                    *Justice*

-------------------------------------------------------------------------------X          INDEX NO.          151899/2022

MICHAEL KELLY,
                                                                                  MOTION DATE     12/23/2024,
                                                                                                  01/09/2025,
                          Plaintiff,

                          - v -                                                    MOTION SEQ. NO.      004 005

METROPOLITAN TRANSPORTATION AUTHORITY, MTA
CAPITAL CONSTRUCTION COMPANY, and TUTOR
PERINI CORPORATION,                                                               **DECISION + ORDER ON
                                                                                  MOTION**
                          Defendants.

-------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document numbers (Motion 004) 80-97, 112, 115-119, 123

were read on this motion to/for          <u>          JUDGMENT - SUMMARY          </u>.


The following e-filed documents, listed by NYSCEF document numbers (Motion 005) 98-111, 113, 120-121, 122, 124

were read on this motion to/for          <u>          JUDGMENT - SUMMARY          </u>.

In this action alleging violations of Labor Law §§ 200, 240 (1) and 241 (6), plaintiff, a construction worker, allegedly fell 10-12 feet when a safety rail broke off, while he was climbing down into an elevator machine room located within the East Side Access Project subway tunnels under Manhattan (the Project).

Plaintiff Michael Kelly now moves for summary judgment in his favor as to liability on his Labor Law § 240 (1) claim as against defendants Metropolitan Transportation Authority (MTA), MTA Capital Construction Company (MTACC) and Tutor Perini Corporation (Tutor Perini) (Seq. No. 004). Defendants oppose the motion.

Defendants separately move for summary judgment dismissing the complaint in its entirety (Seq. No. 005). Plaintiff opposes their motion.

This decision addresses both motions.

## BACKGROUND

On the day of the accident, January 26, 2021, the subway tunnels were operated by MTA. MTACC, on behalf of MTA, entered into a contract with Tutor Perini to provide general contractor services for the project within the subway tunnels (the Project), which entailed building out new tunnels and refitting old tunnels. Tutor Perini, in turn, hired

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL          Page 1 of 15
  Motion No.  004 005 005

1 of 15

non-party Five Star Electric (Five Star) to perform electrical work on the Project. Plaintiff was employed by Five Star.

### *Plaintiff's 50-h Testimony (NYSCEF Doc. Nos. 87, 88)*

Plaintiff testified that, on the day of the accident, he was employed by Five Star as an electrician on the Project (plaintiff's 50-h, at 16).  His duties included "running conduit and pulling wire" (*id.* at 21).  He had a partner on the Project named "Mark" (*id.* at 28).

Two weeks prior to the accident, plaintiff and Mark were assigned to work in the Project's elevator machine rooms (*id.* at 29).  They received this assignment from Kevin Donohoe or Frank DiLorenzo, their Five Star foremen (*id.* at 28, 37).  Plaintiff successfully completed his work in four of the six elevator rooms prior to the accident (*id.* at 32).

To enter the elevator room, plaintiff had to climb down through a hatch (*id.* at 35) onto a "ship ladder" (*id.* at 36), and then descend that ladder into the machine room. The machine rooms were approximately 10-to-12 feet below grade level (*id.* at 62). Prior to the accident, plaintiff had no issue accessing the machine rooms (*id.* at 40).

Plaintiff testified that the hatches had "chains and a pole around [them].  And then usually a barricade made out of two-by fours . . ." (*id.* at 40).  Specifically, the hatches had "two poles that went in the front [of the hatch] and chains that went across the opening and the sides" (*id.* at 46) (the Poles).  In addition, there were temporary wooden barricades built around the hatches (*id.* at 46, 50 ["They were safety rails"]).  To access the hatch, a worker would remove a removable chain attached to the Poles in front of the opening and enter the hatch (*id.* at 47).

Through the hatch, was a "shipyard ladder" (also called a ship ladder) that went down to the base of the room (*id.* at 41).  Plaintiff explained that a ship ladder is a permanent fixture that is "similar to a staircase, except it's on a very, very steep grade of incline . . . half way between a ladder and a staircase" (*id.* at 44).  The ship ladder's handrails were "below grade" (*id.* at 41).

To access his work area on the day of the accident, plaintiff needed to access the ship ladder (the Ladder).  Plaintiff testified that, to climb down, he would typically "put [his] hand on whatever is available to hold onto, just to take that first step" (*id.* at 43, 50 [he would use "[t]he pole, the barricade . . . really there was no set pattern"]).  The Ladder's handrails were within reach after the second step down (*id.* at 43).  He was never explicitly told what to hold on to (*id.* at 51).

Usually, Poles were in place before plaintiff arrived at a hatch, but on a few occasions, plaintiff had to set them up himself (*id.* at 47-48).  He was directed to do so by his foremen (*id.* at 51).

**151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL**          **Page 2 of 15**
**Motion No.  004 005 005**

2 of 15

[* 2]

On the day of the accident, plaintiff was directed to work in one of the elevator rooms.  When he and his partner, Mark, arrived, the Poles had not been set up at the subject hatch (the Hatch).  When he and Mark tried to set up the Poles, they "realized that [they] couldn't remove the chain to get down the front of the hole" (*id.* at 53) because "the poles weren't installed properly" (*id.* at 52).  He did not know who installed the Poles (*id.* at 62).

Plaintiff further explained that "the opening on the chains weren't in the front, the eyelets were on the side chain, so you couldn't access the hole" (*id.* at 52-53, 54 ["the side chain had the removable part, not the front chain . . . .  So they just put the hook on the wrong chain").  Plaintiff testified that, because of this, he could not use the Poles (*id.* at 57).  He was only able to use the wooden barricade to steady himself (*id.* at 57).

Prior to the accident, plaintiff and Mark had successfully traversed the Ladder using the barricade to steady themselves "four or five" times (*id.* at 58).  On the next attempt, when plaintiff "put [his] hand on the railing [and] took [his] first step down to the first rung" the piece of the wooden barricade he held on to "came off" and plaintiff "just fell straight down" through the hatch to the bottom of the ship ladder (*id.* at 63).

According to plaintiff, he injured his left hip, left knee, right knee, right elbow, and left ankle (*id.* at 83).

At his second 50-h hearing, plaintiff was shown several photographs that depicted the accident location.  He confirmed that the photographs depicted the chain and pole system attached to hatches.  He was unable to determine from the photographs whether there was a latch mechanism on the chains that would allow them to be removed (plaintiff's second 50-h at 41-47).  In one photograph, he noted that there did appear to be a properly placed latch and a disconnected chain (*id.* at 42-43).  He testified that the latch "was not there" at the time of the accident (*id.* at 42).  He did not know when that photograph was taken (*id.* at 41 ["I don't know . . . what they've done since they took the other pictures or since the accident. . . . it wasn't like that when I got hurt"]).

### Plaintiff's Deposition Testimony (NYSCEF Doc. No. 89)

Plaintiff's testimony largely aligns with his 50-h testimony.  Plaintiff reiterated that the Poles attached to the Hatch were installed improperly (*id.* at 124 [plaintiff was "originally . . . going to put the poles out . . . but you couldn't remove the front, so you wouldn't be able to get down the hole if you put the poles in place"]).

At the deposition, plaintiff was shown two photographs that were attached to his notice of claim.  He confirmed that the photographs depicted the accident location and were taken on the day of the accident (plaintiff's tr at 73-74).  He was also shown a series of photographs that were shown to him at the 50-h hearing.  He confirmed that he did not know who took those photographs (*id.* at 108).  He also testified that in some of

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL          Page 3 of 15
Motion No.  004 005 005

3 of 15

[* 3]

the photographs shown to him, the chains appeared to be correctly installed, meaning that "they must have changed it" (*id.* at 124).

Plaintiff also testified that he did not know who installed the barricade (*id.* at 114). The barricade was always in place because the Hatch was always open (*id.* at 115). The barricade added extra fall protection to the hatch (*id.* at 122).

Finally, plaintiff testified that he did not report the issue with the Poles to anyone prior to the accident (*id.* at 198).

At his deposition, plaintiff testified that he hit every rung on the ladder and landed on his feet (*id.* at 127). According to plaintiff, he immediately felt pain in his right knee, left ankle, and left hip—"the whole left side" (*id.* at 136). Plaintiff testified that he later felt pain in his right elbow (*id.*).

### Deposition Testimony of David Quatmann (Tutor Perini's Senior Superintendent) (NYSCEF Doc. No. 90)

David Quatmann testified that, on the day of the accident, he was a senior superintendent for Tutor Perini at the Project. His duties included "[o]verse[ing] the construction of whatever project" he was assigned to (Quatmann tr at 14).

Quatmann testified that MTA hired Tutor Perini as a general contractor for the Project (*id.* at 17). Tutor Perini employed several superintendents as well as carpenters and laborers (*id.* at 23). Quatmann confirmed that Tutor Perini hired Five Star to perform electrical work on the Project (*id.* at 29). Tutor Perini representatives had the authority to stop work if they witnessed unsafe work or working conditions (*id.* at 39).

Tutor Perini's carpenters were responsible for erecting temporary wooden barricades around the elevator machine rooms (*id.* at 25, 68). No other entity built them (*id.* at 26).

Quatmann testified that he "walked the site every day, all day long" but that he had no specific recollection of walking near the accident location on the day of the accident (*id.* at 60). He learned of the accident shortly after it happened. He did not conduct the accident investigation (*id.* at 62).

At his deposition, Quatmann was shown several photographs. He identified them as depicting "elevator machine room access" at the Project (*id.* at 70). In one photograph he identified a "clasp on the top chain and the bottom chain" which indicated that the chains could be removed (*id.* at 72). He did not know when the photos were taken (*id.* at 72).

Quatmann testified that the Poles could be set up with the removable chains on the side of the Hatch (*id.* at 88-89). This would allow access to a hatch "if the safety rail was not there" (*id.* at 91).

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL          Page 4 of 15
Motion No.  004 005 005

[* 4]                                                        4 of 15

### Affidavit of Mark Starace (Five Star Employee) (NYSCEF Doc. No. 91)

Mark Starace stated that on the day of the accident, he was an electrician employed by Five Star on the Project (Starace aff, ¶ 3). Plaintiff was his coworker.

Starace stated that, to access the Hatch, "there are metal pipes that can be inserted into openings" at the front of the Hatch "that are typically used as side rails to the ladder to assist in going up and down" (*id.,* ¶ 4). He further explained that the "poles are connected with metal chains, with clasps that allow you to disconnect the chains so that they do not block the entrance" (*id.,* ¶ 4), but that on the day of the accident, he "observed that the chains connecting the poles did not have removable clasps" (*id.,* ¶ 5).

Due to this, he and plaintiff "were not able to use the poles as side rails to the ladder" (*id.,* ¶ 6). Instead, they "used wood railings that were set up around the [hatch] . . . [which] was the only available object above the ground level to hold onto while using the ladder" (*id.,* ¶ 7). He was at the bottom of the ladder when plaintiff fell. After exiting the hatch, Starace saw the broken barricade (*id.,* ¶ 10).

### Accident Reports

#### Tutor Perini Incident Report (NYSCEF Doc. No. 93)

Tutor Perini's incident report, dated the day of the accident, states that plaintiff "had gone up and down at least four times prior to incident" and that he "stepped on ladder, turned to face ladder, grabbed guardrail which broke off" and fell down the ladder (NYSCEF Doc. No. 93).

#### Plaintiff's Witness Statement (NYSCEF Doc. No. 94)

Plaintiff's witness statement is signed and dated on the day of the accident. It states that plaintiff "was climbing down the ship ladder" when he "put [his] hand on the wooden safety rail for just a little support. It broke and [he] fell down the ladder" (NYSCEF Doc. No. 94).

### DISCUSSION

"To prevail on a motion for summary judgment, the movant must make a prima facie showing by submitting evidence that demonstrates the absence of any material issues of fact. Once that initial showing has been made, the burden shifts to the opposing party to show there are disputed facts requiring a trial. All facts are viewed in the light most favorable to the non-moving party" (*Nellenback v Madison County* 44 NY3d 329, 334 [2025] [internal citations omitted]).

**151899/2022  KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL**  **Page 5 of 15**
**Motion No.  004 005 005**

5 of 15

### The Labor Law § 240 (1) Claim (Motion Sequence Numbers 004 and 005)

Plaintiff moves for summary judgment in his favor on his Labor Law § 240 (1) claim. Defendants move for summary judgment dismissing the same claim.

Labor Law § 240 (1), known as the Scaffold Law, provides as relevant:

"All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202 AD3d 601, 604 [1st Dept 2022] [internal quotation marks and citations omitted]). It "was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

"The statute is violated when the plaintiff is exposed to an elevation-related risk while engaged in an activity covered by the statute and the defendant fails to provide a safety device adequate to protect the plaintiff against the elevation-related risk entailed in the activity or provides an inadequate one" (*Jones v 414 Equities LLC*, 57 AD3d 65, 69 [1st Dept 2008]; *O'Brien v Port Auth. of N.Y. & N.J.,* 29 NY3d 27, 33 [2017] [section 240 liability "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein"]).

In addition, Labor Law § 240 (1) "must be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC,* 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

That said, not all workers injured at a construction site fall within the scope of protections of section 240 (1), and "a distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]; *Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept 2007] [section 240 (1) "does not cover the type of ordinary and usual peril to

[* 6]

which a worker is commonly exposed at a construction site"). Instead, liability is "contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Nicometi v Vineyards of Fredonia, LLC*, 25 NY3d 90, 97 [2015], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

Therefore, to prevail on a Labor Law § 240 (1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

Here, plaintiff's accident occurred while he was accessing a below-grade ladder to the below-grade elevator machine room that was his work area. It is undisputed that the Ladder was the sole means of access to his work area. It is also undisputed that the wooden barricade that he used to steady himself while descending the first two steps of the Ladder broke, causing him to fall 10-12 feet.

Plaintiff established that the Poles attached to the Hatch would have provided him with a means to safely access the Ladder. Plaintiff also established that the Poles could not be used as configured.

Specifically, Plaintiff testified that if the Poles were put in place, the safety chains attached to them would have blocked access to the Ladder, as they were not removable (plaintiff's 50-h at 52-53; plaintiff's tr at 124). This testimony is corroborated by Starace's statement that the chains connecting the Poles "did not have removable clasps" (Starace aff, ¶ 5) and that, due to this, he and plaintiff "were not able to use the poles as side rails to the ladder" (*id.* ¶ 6).

Plaintiff also established that, because of this flaw with the Poles, the wooden barricade surrounding the Hatch was the only device available to assist him with accessing the below-grade Ladder (plaintiff's 50-h at 57). It is undisputed that the wooden barricade broke and, as a result, plaintiff fell through the hatch (*see e.g. Priestly v Montefiore Med. Ctr./Einstein Med. Ctr.,* 10 AD3d 493, 494 [1st Dept 2004] [permanently affixed ladder that *inter alia* "lacked side rails for gripping" was "grounds for the imposition of liability pursuant to Labor Law § 240 (1)"]).

Given the foregoing, plaintiff has established that a proper safety device to access his below-grade work area was not provided, and that this failure was a proximate cause of the accident. Accordingly, plaintiff has established prima facie entitlement to summary judgment in his favor as to liability on his Labor Law § 240 (1) claim.

In opposition, defendants raise several arguments, which fail to raise a question of fact warranting denial of summary judgment as to liability in plaintiff's favor.

Contrary to defendants' argument, the permanently affixed ladder does constitute a safety device as contemplated by section 240 (1), because the permanently affixed

[* 7]

ladder was the only means of gaining access to the work area (*see Priestly,* 10 AD3d at 494 ["The permanently affixed ladder from which plaintiff fell was the only means of gaining access to his elevated worksite and as such was a 'device' within the meaning of Labor Law § 240 (1)"]; *Conlon v Carnegie Hall Socy., Inc.,* 159 AD3d 655, 655 [1st Dept 2018] [fall down permanent stairway that was sole means of access to work area fell within the scope of section 240 [1]).

Next, defendants argue that plaintiff was the sole proximate cause of the accident because he chose not to use the Poles to access the Ladder. Relying on Quatman's testimony, they contend that the Ladder could have been safely accessed from the side of the Hatch, and that plaintiff's failure to do so was the sole cause of the accident. Quatmann testified that the chains could have opened from the side, and that such access would provide safe access to the Ladder (Quatmann tr at 88-89).

First, Quatmman's testimony that he saw removable chains on poles in photograph F-1 at his deposition does not contradict plaintiff's testimony that the chains on the Poles that plaintiff used on the date of the accident were not removable, in the absence of evidence that Quatmann had examined the same poles that plaintiff had used on the date of the accident. Indeed, Quatmann was asked:

```
          Q.      If the chains were not removable, they
     would not be able to have the pole in place where
     they should be and gain entry into the hatch; is that fair?
          A.      I cannot answer that question.
```

(Quatmman EBT, at 87).

Quatmann also noted that a worker could only access the removable chains on the side of the hatch "if the safety rail was not there" (*id.* at 91). However, it is undisputed that a safety rail – the very barricade at issue in this action – was in place at the side of the Hatch. The photographs attached to plaintiff's motion appear to depict that the barricade blocked access to the sides of the Hatch:

(continued on next page)

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL          Page 8 of 15
Motion No.  004 005 005

8 of 15



(*see* plaintiff's exhibit 11, at 3 [bearing exhibit tag F6]). Given that the barricade blocked access to the Hatch from the side, Quatmann's testimony therefore does not raise a question of fact as to whether the Poles could have been used.

As the record demonstrates that plaintiff could not use the Poles to access the Ladder, he cannot be faulted for failing to use them (*see Lemache v Elk Manhasset LLC*, 222 AD3d 591, 592 [1st Dept 2023] [a plaintiff "cannot be faulted for failing to use safety devices or instrumentalities that cannot be effectively used at a worksite"]).

To the extent that defendants argue that plaintiff should not be granted summary judgment in his favor because the barricade was not intended to provide fall protection for the Ladder or for people intentionally seeking to enter the Hatch, such argument is unpersuasive. Any alleged misuse of the barricade on plaintiff's part goes to the issue of comparative fault. Comparative fault is not a defense to a Labor Law § 240 (1) cause of action, because the statute imposes absolute liability once a violation is shown (*Bland v Manocherian*, 66 NY2d 452, 460 [1985]; *Melito v ABS Partners Real Estate, LLC*, 129 AD3d 424, 425 [1st Dept 2015]). "[W]here the owner or contractor has failed to provide adequate safety devices to protect workers from elevation-related injuries and that failure is a cause of plaintiff's injury, [n]egligence, if any, of the injured worker is of no consequence" (*Hernandez v Bethel United Methodist Church of N.Y.*, 49 AD3d 251, 253 [1st Dept 2008] [internal quotation marks and citations omitted]).

Here, the inability to use the Poles, coupled with the failure of the barricade, was a proximate cause of plaintiff's injury. Accordingly, plaintiff was not the sole proximate cause of the accident.

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL          Page 9 of 15
Motion No.  004 005 005

9 of 15

Similarly, defendants have not established that plaintiff was a recalcitrant worker because they have not established that plaintiff "chose for no good reason" not to use the Poles (*Cahill v Triborough Bridge and Tunnel Auth.*, 4 NY3d 35, 40 [2004]). As discussed above, plaintiff established a good reason for not using the Pipes.

In light of the foregoing, plaintiff is entitled to summary judgment in his favor as to liability on his Labor Law § 240 (1) claim as against defendants. Defendants are not entitled to summary judgment dismissing the same.

### The Labor Law § 241 (6) Claim (Motion Seq. No. 005)

Defendants move for summary judgment dismissing the Labor Law § 241 (6) claim as against them.

Labor Law § 241 (6) provides, in pertinent part, as follows:

> "All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> * * *
>
> (6)    All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]).

To sustain a Labor Law § 241 (6) claim, it must be established that the defendant violated a specific, "concrete specification" of the Industrial Code, rather than a provision that considers only general worker safety requirements (*Messina v City of New York,* 300 AD2d 121, 122 [1st Dept 2002]). Further, "a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code regulation that is applicable to the circumstances of the accident" (*Yaucan v Hawthorne Vil., LLC*, 155 AD3d 924, 926 [2d Dept 2017]]; *see also Sutherland v Tutor Perini Bldg. Corp.*, 207 AD3d 159, 161 [1st Dept 2022]). "Whether a regulation applies to a particular condition or circumstance is a question of law for the court" (*Harrison v State of New York,* 88 AD3d 951, 953 [2d Dept 2011]).

As an initial matter, plaintiff lists multiple violations of the Industrial Code in his complaint and bill of particulars. Except for sections 23-1.7 (b) (1) and 1.15, plaintiff

**151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL**        **Page 10 of 15**
  **Motion No.  004 005 005**

[* 10]

does not oppose their dismissal.  These uncontested provisions are deemed abandoned (*Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section"]).  Accordingly, defendants are entitled to summary judgment dismissing the abandoned provisions.

*Industrial Codes 12 NYCRR 23-1.7 (b) (1) and 23-1.15*

Industrial Code 12 NYCRR 23-1.7 (b) (1) (i) and 23-1.15 are sufficiently specific to support a Labor Law § 241 (6) violation (*see Rooney v D.P. Consulting Corp.,* 204 AD3d 428 [1st Dept 2022]).  Code section 23-1.7 (b) (1) governs hazardous openings, while section 23-1.15 sets out the requirements for safety railings.

Section 23-1.7 (b) (1) provides, in pertinent part, as follows:

> "(1) Hazardous openings.
>
>> "(i) Every hazardous opening into which a person may step or fall shall be guarded by . . . a safety railing constructed and installed in compliance with this Part (rule)."

Section 23-1.15 (a) provides the requirements for safety railings.  It provides, as relevant:

> "[A] safety railing shall consist of as a minimum of an assembly constructed as follows:
>
>> "(a) A two inch by four inch horizontal wooden hand rail, not less than 36 inches nor more than 42 inches above the walking level, securely supported by two inch by four inch vertical posts at intervals of not more than eight feet"

In their motion, defendants briefly argue that both sections are inapplicable because it is undisputed that a safety railing/barricade was provided.  Defendants provide no case law in support of this position.  Nor do they provide any analysis of whether the safety railing was "complian[t] with this part (Rule)" or how the railing/barricade comported with the requirements of section 23-1.15.  In their reply, defendants' discussion is limited solely to testimony regarding how the barricade was rated for 200 pounds of downward force, which is immaterial to the above Industrial Code provisions.

Accordingly, defendants have failed to meet their prima facie burden for summary judgment dismissing these claims.

**151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL**  **Page 11 of 15**
  Motion No.  004 005 005

11 of 15

Given the foregoing, defendants are not entitled to summary judgment dismissing that part of the Labor Law § 241 (6) claim predicated on violations of Industrial Code 12 NYCRR 23-1.7 (b) (1) and 23-1.15.

### *The Common-Law Negligence and Labor Law § 200 Claims (Motion Seq. No. 005)*

Defendants move for summary judgment dismissing the common-law negligence and Labor Law § 200 claims.

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005], citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Labor Law § 200 (1) states, in pertinent part, as follows:

> "All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons."

There are two distinct standards applicable to section 200 cases, depending on the situation involved: (1) when the accident is the result of the means and methods used by a contractor to do its work, and (2) when the accident is the result of a dangerous condition that is inherent in the premises (*see McLeod v Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Sts.,* 41 AD3d 796, 797-798 [2d Dept 2007]; *see also Griffin v New York City Tr. Auth.*, 16 AD3d 202, 202 [1st Dept 2005]).

Here, the accident occurred when a safety rail on a barricade broke, causing plaintiff to fall into a hatch. Accordingly, the accident was caused in part by the means and methods of the work (the construction and maintenance of the barricade and the Poles). It also occurred due to a hazardous condition arising from the inability to safely access the permanently installed Hatch and Ladder. Accordingly the accident was also caused, in part, by a hazardous condition at the Premises.

### *MTA and MTACC*

As an initial matter, plaintiff "does not dispute" the dismissal of the common-law negligence and Labor Law § 200 claims with respect to MTA and MTACC (plaintiff's aff in opposition ¶ 6). A review of defendants' motion establishes that defendants have met their prima facie burden for dismissal of the claims against MTA and MTACC.

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL        Page 12 of 15
  Motion No.  004 005 005

12 of 15

Defendants are, therefore, entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims as against MTA and MTACC.

*Tutor Perini*

*Means and methods*

Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work" (*LaRosa v Internap Network Servs. Corp.*, 83 AD3d 905, 909 [2d Dept 2011]; *DaSilva v Toll First Ave., LLC,* 199 AD3d 511, 513 [1st Dept 2021]; *Andino v Wizards Studios N. Inc.*, 223 AD3d 508, 509 [1st Dept 2024]). Specifically, "liability can only be imposed against a party who exercises *actual* supervision of the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 11 [1st Dept 2012]).

Initially, defendants contend that Tutor Perini cannot be liable under a means and methods analysis because it did not control plaintiff's work. This argument is unpersuasive. The relevant question is not whether Tutor Perini controlled plaintiff's work, but whether it controlled the injury producing work (*see Naughton*, 94 AD3d at 11; *Balcazar v Commet 380, Inc.*, 199 AD3d 403 [1st Dept 2021]). Here, the relevant injury producing work was the installation and upkeep of the safety railing/barricade.

To that end, testimony establishes that Tutor Perini was the entity charged with the construction and installation of the safety railing/barricades around the Hatch (Quatmann tr at 25, 68). A general contractor who is directly responsible for the installation of safety devices may be liable under Labor Law § 200 when that safety device fails (*see e.g. Sotarriba v 346 W. 17th St. LLC.*, 179 AD3d 599, 601 [1st Dept 2020] [denying dismissal of section 200 claims against a general contractor because "(w)hile the record demonstrates that (the general contractor) had no authority to exercise supervisory control over plaintiff's use of the ladder, it presents an issue of fact as to whether (the general contractor) had such authority over the proper barricading of the stairwell" ]; *Weidtman v Tremont Renaissance Hous. Dev. Fund Co., Inc.,* 224 AD3d 488, 491 [1st Dept 2024] [denying dismissal of common-law negligence claim "since there are issues of fact as to whether [the defendant] actually supervised and controlled the installation of fall protection"]). Accordingly, this argument does not establish Tutor Perini's freedom from negligence as a matter of law.

Next, defendants argue that there is no evidence establishing that the barricade was defective before the accident, and therefore, it would be speculative to impose liability against Tutor Perini under the common law or Labor Law § 200, citing *Manzo v 372 Doughty Blvd. Corp.,* 147 AD3d 930 (2d Dept 2017); *Ghany v Hossain*, 65 AD3d 517 (2d Dept 2009) and *Grob v Kings Realty Assoc.*, LLC, 4 AD3d 394 (2d Dept 2004).

These arguments are unavailing. It does not avail Tutor Perini to argue that it had no prior actual or constructive notice that the barricades were defective, when the

151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL          Page 13 of 15
   Motion No.  004 005 005

13 of 15

[* 13]

unrebutted testimony establishes that Tutor Perini installed the safety railing/barricades (i.e., that Tutor Perini caused or created the defective barricades). Second, unlike the cases which defendants cite, plaintiff is not speculating that the defective barricade caused his fall.  Plaintiff testified at his 50-h hearing that a piece of the wooden "came off" as he took his first step down the ship ladder (*see* plaintiff's 50-h, at 63).

Given the foregoing, defendants have not met their prima facie burden for dismissal of that part of the Labor Law § 200 claim that arises from the means and methods of the injury producing work.

*Hazardous Condition*

Where an injury stems from a dangerous condition on the premises, an owner may be liable in common-law negligence and under Labor Law § 200 "'when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice'" (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011], quoting *Chowdhury v Rodriguez*, 57 AD3d 121, 128 [2d Dept 2008]).

Here, the record establishes that Tutor Perini constructed the barricade (Quatmann tr at 25).  In addition, there is no testimony that it delegated the responsibility for maintaining the barricade to another entity.  Accordingly, at least a question of fact exists as to whether Tutor Perini "created the dangerous condition" (*Mendoza*, 83 AD3d at 9).

Notably, defendants do not raise any arguments regarding the "create" prong of the hazardous condition analysis.  Rather, they rely on the foreseeability argument discussed above.  That argument is equally unpersuasive to this analysis as plaintiff is alive and has testified to the happening of the accident.

Given the foregoing, defendants are not entitled to summary judgment dismissing the common-law negligence and Labor Law § 200 claims against Tutor Perini.

The parties remaining arguments have been considered and were unavailing.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff's motion for summary judgment in his favor as to liability on the Labor Law § 240 (1) claim as against defendants (Motion Seq. No. 004) is **GRANTED**; and it is further

**ORDERED** that defendants' motion for summary judgment dismissing the complaint (Motion Seq. No. 005) is **GRANTED IN PART TO THE EXTENT** that defendants are granted summary judgment dismissing the common-law negligence and Labor Law § 200 claims against defendants Metropolitan Transportation Authority and

**151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL**         **Page 14 of 15**
  Motion No.  004 005 005

14 of 15

MTA Capital Construction Company only, and also granting summary judgment dismissing plaintiff's Labor Law § 241 (6) claim, except as to those violations of Labor Law § 241 (6) that are predicated upon 12 NYCRR 23-1.7 (b) (1) (i) and 12 NYCRR 23-1.15; and the motion is otherwise denied; and it is further

**ORDERED** that the remainder of the action shall continue.

This constitutes the decision and order of the court.

**ENTER:**

20260224171020RTSAID3477093FDC440E69DFF9697E06065AD

| 2/24/2026 | | | | | RICHARD TSAI, J.S.C. | |
|-----------|---|---|---|---|---|---|
| **DATE** | | | | | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|---|----------------------|---|
| **SEQ NO. 004** | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| **SEQ NO. 005** | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| **APPLICATION:** | | SETTLE ORDER | | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**151899/2022   KELLY, MICHAEL vs. METROPOLITAN TRANSPORTATION AUTHORITY ET AL**          **Page 15 of 15**
**Motion No.  004 005 005**

15 of 15